**03-14-00681-CR**

Cause No. 002368-c

FILED
February 13, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

| | |
|---|---|
| Robert.Lee.Brown<br>Applicant | In The Third District Court<br>Of Appeals |
| V. | OF |
| The State Of Texas<br>Respondent | Austin, Texas |

Applicant's Memorandum In Support For DNA Testing Under Article 64.01 (a-1) and (b) Tex. Code Crim. Proc.

RECEIVED
FEB 1 3 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

To The Honorable Judge Of Said Court:

Comes Now, Robert.Lee.Brown, Applicant Pro-Se, in the above styled and numbered cause do hereby file this Brief in support for DNA Testing and memorandum in Law of support in accordance with Article 64.01 (a-1) and (b) Tex. Code Crim. Proc. of Texas Code Of Criminal Procedure and would like to show the Court as follows:

## Jurisdiction

The Honorable Court has complete jurisdiction in accordance with Article 64.01 (a-1) and (b) of the Texas Code of Criminal Procedure.

## Statement Of Facts

On May 10, 2000, the applicant was sentenced and convicted for **aggravated robbery** in which he was allegedly to have committed on the date of September 29 or 30th of 1999. He then proceeded to fight his case via direct appeal which was filed on **January 29, 2000** and it was affirmed on **July 26, 2000**. Since that time the Applicant has taken his case unto the U.S. Supreme Court attacking his conviction with only the direct appeal that was filed on his case and the doors were closed to him the entire way. Finally, in January of 2009 the applicant was able to get hold of his Court Records and found out there was more errors that should have been litigated via Habeas Corpus. This is the third attempt to exhaust his remedies based on actual innocence. This memorandum in Law of support has the necessary argument and authorites that need to be litigated and the applicant is also hope that actual innocence was never argued in his previous writ because he did not have the proper evidence that the records

1

reveals and therefore would like this opportunity to exhaust these arguement before they are presented to the Federal Court.

The District Clerk of Travis County did therefore also deliberatley withheld his previous application 0023-A for a five month period before it was filed and that action caused the time limits to run out to where the Federal Court time barred him from filing his Federal writ. Even though the applicant realizes that this application and brief in support can be construed as a successive application but the motion for leave is also filed to ask the permission of this Honorable Court in order to prove actual innocence and deceptive police tactics and prejudice on behalf of the prosecution in charge of the case and the misconduct of the tribunal for then allowing such miscarriage of justice to take place. It is the duty of the Trial Court to seek the truth and to right any wrongs that have taken place in the judicial system and the applicant believes that this application and brief in support will bring the needed attention to warrant an evidentiary hearing in order for justice to be done.

## Discussion

(In Darrell V. State, 2013 Tx. App. Lx.13237)
An order denying DNA Testing is an "Appealable order" under rule 25.2(a) (2). Guitierrez V. State,307 Sw3d 318, 321 (Tx. Cr. App.2010)

However, the decision to deny appointed counsel is not . Id at 323 ("Such an appeal is premature; a motion for appointed Counsel is a preliminary matter that precedes the initiation of Chapter 64 proceedings.")

Robert.Lee.Brown # 927914 2/08/15
Eastham Unit
2665 Prison Rd. #1
LoveLady, Texas
75851

2

## PRAYER

Wherefore, Premises Considered, Applicant humbly prays that this Honorable Court will grant the Motion For Successive Petition and allow him the one and only opportunity to prove that he has the Evidence in this application and in the Memorandum to show that he has standing to be granted relief and that a Evidentiary Hearing is the only way that he can proceed to show his innocence.

Respectfully Submitted,

Robert Lee Brown #927914
TDCJ-CID, Applicant Pro-Se
Eastham Unit
2665 Prison Road #1
Lovelady, Texas 75851

## CERTIFICATE OF SERVICE

I, Robert Lee Brown, Applicant Pro-Se, hereby certify that the forgoing information is true and correct, and a copy is being mailed to the District Court Clerk of Travis County at P.O.Box 1748, Austin, Tx.78767. Signed on this 7 day of February ,2015.

Respectfully Submitted,

Robert Lee Brown #927915
Applicant Pro-Se
TDCJ-CID
Eastham Unit
2665 Prison Road #1
Lovelady, Texas 75851

3

Cause no. 00-2368-c

Ex Parte                              §        IN THE COURT OF CRIMINAL APPEALS

                                      §

                                      §        OF

                                      §

Robert Lee Brown                      §        AUSTIN, TEXAS


APPLICANT'S MOTION FOR LEAVE OF COURT
TO FILE SUCCESSIVE APPLICATION FOR AN
APPLICATION FOR WRIT OF HABEAS CORPUS IN
ACCORDANCE WITH ARTICLE 11.07 §4(A)(1(2)
OF THE TEXAS CODE OF CRIMINAL PROCEDURE.


TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW, Robert Lee Brown herein known as Applicant, do hereby file this Motion For Leave to File Successive Application for an Application for Writ of Habeas Corpus in Accordance with Article 11.07 §4(a)(1)(2) of the Texas Code of Criminal Procedure and hereby would like to show the Court as follows:


## JURISDICTION

This Court holds ultimate jurisdiction in accordance with Art. 11.07 of T.C.C.P.


## CONFINEMENT

This Applicant is being held illegally by Nathaniel Quarterman, Director of the Texas Department of Criminal Justice, Eastham Unit, Institutional Division, Lovelady, Texas.


## ARGUMENT FOR SUCCESSIVE APPLICATION

The Texas Code of Criminal Procedure Article 11.07 §4(a)(1)(2) state that "If a subsequent application for Writ of Habeas Corpus is filed after final dispostition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless application contains sufficient specific facts that establishes the following:

(1) the current claims and issues have not been and could not have been

1.

presented previously in an original application or in a previously considered application filed under this article becuase the factual or legal basis for the claim was unavailable on the date applicant filed the previous application; or

(2) by a proponderence of the evidence, but for violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

When the first application was filed the Applicant had no scientific knowledge of working law and only had the appellate brief provided him by his appellate attorney who only argued one issue about denying the Motion for Suppression of evidence presented by the State.

Brown requested many times through coresspondence and having his family also contact his attorney on appeal about giving him a copy of his Clerk's Records and Court Reporter's records and Exhibits presented and she refused any and all attempts at contact.

The record clearly shows that his trial and appellate counsel were court appointed and he did not have the funds to retain counsel or purchase the records until January of this Year of 2009.

Brown avers that he is not educated in the technical science of the law and neither does he have assistance from any trained, skilled attorney or the many accoutrements available to attorneys for free-world pro-se litigant in order to help him to present all errors that this future application will have included within that needs to be litigated to satisfy the exhaustion requirement before these errors are presented to the Federal District Court. Therefore, Brown contends that he should not be held to the same Stringent standards of pleading or research as an educated attorney in the preperation and presentation of his Pro-Se application for writ of Habeas Corpus. See Haines v. Kerner, 92 S.Ct. 594, 595 (1972); Pete v. Metcalf, 8 F.3d 217 (5th Cir. 1993).

## ERRORS PRESENTED IN ORIGINAL HABEAS

Defendant's Motion to Supress In-Court identification by victim was denied.
The victim said his attacker was between 18-20 years old, Applicant was 32 years of age.
Illegal Sentence, void indictment.
Denial of effective assistance of counsel,

These errors were not substantiated by any evidence from the record

2.

and the original application was dismissed without prejudice and Applicant believes that now that he has a complete copy of his trial records he can present the following errors and show by the proponderence of the evidence that a reasonable juror would not have found him guilty beyond a reasonable doubt.

## ERRORS APPLICANT WANTS TO PRESENT

Perjured Testimony of Sonja Lee Holder and Pete Arrevalo

The evidence was legally and factually insufficient to support the conviction.

Actual Innocence

Police fabrication of out-of-court photo line up identification.

Prosecutorial Misconduct.

Conspiratorial actions of the District Clerk of taking 5½ months to file original application.

Ineffective Assistance of Counsel
    (a) failed to object to accomplice witness testimony.
    (b) failed to develop a defense.
    (c) failed to object to perjured testimony
    (d) failed to request for balistics, fingerprint, DNA experts to test the State's exhibit 22.
    (e) failed to request any instructions on any defensive issues raised by the evidence and testimony.
    (f) failed to properly preserve error.
    (g) Failed to investigate or interview any of the State's witnesses.
    (h) failed to give adequate representation.

Ineffective Assistance of Appellate Counsel
    (a) failed to present all the potential errors that could give the Applicant a favorable chance at relief.

## CONCLUSION

Brown avers and contends that this successive writ will not be considered to be an abuse of writ if he can show cause for raising a new point of error after one writ of Habeas Corpus has already been filed. Russell v. Collins, 944 F.2d 202, 205 (5th Cir. 1991). Good Cause exists for hearing successive application of Writ of Habeas Corpus where failure of counsel to object to admission of testimony at trial, "is not waiver of error" because constitutional defect has not been identified after trial; when such defect is identified after trial, and its status is applied retroactively, applicant "should" be allowed to raise issues in his subsequent application. Ex Parte Baker, 879 S.W.2d 889, 892-93 (Tex.Crim.App.1994).

Texas law requires that, before a conviction may rest upon an accomplice witness's testimony, that testimony must be corroborated by independent

3.

evidence tending to connect the accused with the crime. This accomplice witness rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the legal anf factual standards of sufficiency.

To determine the sufficiency of the corroboration, regardless of whether an objection was made, the Court must eliminate the testimony of the accomplice witness and examine the testimony of the other witness who did confess to trading sexual favors for drugs and money with a prostitute since she was the age of fifteen. See Taylor v. State, 7 S.W.3d 732, 737 (Tex.App.-Houston[14] dist. 1999); Druery v. State, 225 S.W.3d 491, 498 (Tex.Crim.App.2007).

The underlying premise is that such a witness is a "discredited witness" and that "the testimony of a accomplice witness is also to be scrutinized not only because of any interest she might have, but because her testimony is from a corrupt source. Beathard v. State, 767 S.W.2d 423, 429 (Tex.Crim.App. 1989); Simmons v. State, 205 S.W.3d 65, 72 (Tex.App.-Fort Worth 2006).

In determining the strength of the particular item of non-accomplice evidence, we must examine:

(1) its reliability or believability, and

(2) the strength of its tendency to connect the Applicant to the crime. Jones v. State, 195 S.W.3d 279, 289-90 (Tex.App.-Fort Worth 2006).

The Supreme Court has clarified the abuse of the writ. The State has the burden to plead abuse. This burden is satisfied if the State notes the Applicant's prior writ history with clarity and particularity, identifies claims which appear for the first time in the later application, and alleges abuse by the Applicant. But, for the Applicant to disporve abuse of writ he must show why the claim was not raised in the first application. this would include claims that he was impeded by some objective factor external to his defense, such as the availability of his records which is a reasonable unavailability of the factual basis of the claims. The applicant will show that he was actually prejudiced by the errors of which he complains. And he avers that if he cannot satisfy both the cause and prejudice requirement is not entitled to a evidentiary hearing to develop the claim. Even so, he hopes that the Court will excuse his failure to timely raise the claim if he can show that a fundamental miscarriage of justice "the conviction of a innocent person" will result by failure to entertain the claim.

## PRAYER

4.

WHEREFORE, PREMISES CONSIDERED, Brown humbly prays that this Honorable Court will consider his argument in this Motion and grant it so that he can show that there has been a miscarriage of justice of being an innocent person incarcerated by false and misleading testimony, prosecutorial misconduct, judicial abuse of discretion, etc. These actions created an actual and substantive disadvantage to the Applicant.

Signed and executed on this 28 day of May, 2009.

Respectfully Submitted,

Robert Lee Brown #927194
Applicant Pro-Se
TDCJ-CID
Eastham Unit
2665 Prison Road #1
Lovelady, Texas 75851

## CERTIFICATE OF SERVICE

I, Robert Lee Brown, Applicant Pro-Se, do hereby certify that the foregoing is true and correct and a copy is being mailed to the District Clerk Amalia Rodrigues-Mendoza of Travis County, Texas at P.O. Box 1748, Austin, Texas 78767.

Signed and executed on this 28 day of May, 2009.

Robert Lee Brown #927914
Applicant Pro-Se

5.

(The Clerk of the convicting court will fill this line in.)

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

**NAME:** Robert Lee Brown

**DATE OF BIRTH:** November 13, 1967

**PLACE OF CONFINEMENT:** Eastham Unit

**TDCJ-CID NUMBER:** 927914    **SID NUMBER:** 03447774

(1)    This application concerns (check all that apply):

☒    **a conviction**        □    **parole**

☒    **a sentence**        □    **mandatory supervision**

□    **time credit**        □    **out-of-time appeal or petition for discretionary review**

(2)    **What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)**

167th District Court, Travis County, Austin, Texas

(3)    **What was the case number in the trial court?**

002368

(4)    **What was the name of the trial judge?**

Honorable Michael Lynch

Revised: March 5, 2007

I

**(5) Were you represented by counsel? If yes, provide the attorney's name:**

Hon. Charles Hinneman

**(6) What was the date that the judgment was entered?**

May 10, 2000

**(7) For what offense were you convicted and what was the sentence?**

Aggravated Robbery w/Deadly Weapon

**(8) If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?**

N/A

**(9) What was the plea you entered? (Check one.)**

☐ guilty-open plea     ☐ guilty-plea bargain
☒ not guilty     ☐ *nolo contendere*/no contest

**If you entered different pleas to counts in a multi-count indictment, please explain:**
N/A

**(10) What kind of trial did you have?**

☐ no jury     ☐ jury for guilt and punishment

☒ jury for guilt, judge for punishment

**(11) Did you testify at trial? If yes, at what phase of the trial did you testify?**

N/A

**(12) Did you appeal from the judgment of conviction?**

☒ yes     ☐ no

2

**If you did appeal, answer the following questions:**

(A)   What court of appeals did you appeal to?  Third Court of Appeals

(B)   What was the case number?  3-00-00534-CR

(C)   Were you represented by counsel on appeal? If yes, provide the attorney's name:
      Hon. Linda Icenhauer-Ramirez

(D)   What was the decision and the date of the decision?  July 26, 2001

(13)   Did you file a petition for discretionary review in the Court of Criminal Appeals?

☐ yes                      ☒ no

If you did file a petition for discretionary review, answer the following questions:

(A)   What was the case number?  N/A

(B)   What was the decision and the date of the decision?  N/A

(14)   Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☒ yes                      ☐ no

If you answered yes, answer the following questions:

(A)   What was the Court of Criminal Appeals' writ number? 002368-A, B.

(B)   What was the decision and the date of the decision? Denied, September 11, 2002

(C)   Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

      It was not until January, 2009, that the Applicant was able to purchase his court records in order to fully attack all claims

3

and all applicant had to go on in the past was the direct appeal and it only attacked one issue.

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes        ☒ no

If you answered yes, please provide the name of the court and the case number:

N/A

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes        ☒ no

If you answered yes, answer the following questions:

(A) What date did you present the claim? ___ N/A ___

(B) Did you receive a decision and, if yes, what was the date of the decision?

N/A

If you answered no, please explain why you have not submitted your claim:

N/A

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.*

4

**GROUND ONE:** THE APPLICANT CONTENDS THAT NON-ACCOMPLICE EVIDENCE WAS INSUFFICIENT TO CORROBORATE THE ACCOMPLICE WITNESS TESTIMONY AND CONNECT THE APPLICANT TO THE OFFENSE, RESULTING IN INSUFFICICENT EVIDENCE TO SUPPORT THE CONVICTION.

## FACTS SUPPORTING GROUND ONE:

Pete Arevalo the victim testified that Sonya Holder brought three black males to his home and robbed him. He testified that the black male who had the gun and pistol whipped him was a light-skinned black male between 18 to 20 years of age and there was no mention of beards and mustaches during his original description of his assailants. Th applicant is very dark skinned and he wore a beard and a mustache. The photo spread used for the line-up was overexposed to show that the applicant was dark skinned. Also, the gun that was supposedly used left the home the same way it came in, as testified by Sonya Holder. But, the victim was able to find pieces of a gun in his bed, on the floor of his bedroom, and under the bed in which was already documented by CSI and no such evidence was then found. But the evidence was in his bedroom for three days before he brought it to the investigating detective. See Brief in Support pages 1-14.

6

**GROUND TWO:** THE APPLICANT CONTENDS THAT THE TRIAL COURT ERRED IN NO GIVING A CORRECT CHARGE TO THE JURY WHEN IT FAILED TO STATE WHETHER ACCOMPLICE WAS A WITNESS AS A MATTER OF FACT OR LAW.

## FACTS SUPPORTING GROUND TWO:

On the court's charge to the jury before deliberation the charge is to be hypothetically correct in its writting before the jury can make a determination on guilt or innocence. The charge failed to explain the accomplice as a matter of law or as an accomplice as a matter of fact. Pages 6 and 7 of the court's charge only stated that the accomplice was in fact only as an accomplice and that caused a significant harm to the applicant in recieving a fair trial.

See Brief in Support pages 14-17.

7

**GROUND THREE:** THE APPLICANT CONTENDS THAT THE EVIDENCE PRESENTED WAS MANUFACTURED AND WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE CONVICTION IN ACCORDANCE WITH THE JACKSON V. VIRGINIA STANDARD.

## FACTS SUPPORTING GROUND THREE:

The victim testified that he was beaten with a western style .22 revolver with a pearl handle in which the attackers were trying to sell to him. The gun was allegedly broken to pieces during the attack. The accomplice Sonya Holder testified that the gun came out along with the attackers but, three or four days later the victim brought pieces of a gun and in fact after examination of the evidence the trial court wil see that the pieces is parts from several different weapons in which shows the deception and the manufactured evidence is insufficient to support the conviction.

See Brief in Support 17-21.

8

**GROUND FOUR:** THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO OBTAIN A CONVICTION BASED UPON PERJURED AND FALSE TESTIMONY AND A FAILURE TO CORRECT

THE PERJURED AND FALSE TESTIMONY AFTER IT WAS GIVEN VIOLATED THE APPLICANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO CONSTITUTIONAL DUE PROCESS OF LAW.

## FACTS SUPPORTING GROUND FOUR:

The applicant contends that the record shows that there was false and perjured

testimony given during testimony presented by the State and that the victim and

the accomplice witness conived the testimony together to make sure that the

accused would take the charge and be sentenced to prison due to her vengeful feelings

and spite towars the applicant. The records show that the victim visited the

accomplice Sonya Holder during her incarceration for this robbery against him.

See Brief in Support pages 21-28.

9

**GROUND:** FIVE: THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO USE LEADING QUESTIONS DURING THE COMPLETE TRIAL PROCESS IN WHICH HELPED TO OBTAIN THE CONVICTION.

**FACTS SUPPORTING GROUND:**
The State was permitted to use leading question in a especially egregrious manner that was throughout the entire direct examinations of their witnesses until the defense counsel was then forced to object.  See Brief in Support pages 28-31.

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

10

**GROUND: SIX:** THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO PRESENT EXTRANEOUS OFFENSE TESTIMONY AND FAILED TO PRESENT EVIDENCE THAT THE JURY COULD FIND BEYOND A REASONABLE DOUBT THAT THE APPLICANT COMMITTED THE SAID OFFENSE OF AN EXTRANEOUS BAD ACT.

## FACTS SUPPORTING GROUND:

The applicant asserts that the testiony of extraneous acts were not admissible during the guilt and innocence of the trial. Sonya Holder testified about drug dealing and threats of a violent nature toward her after the commission of the offense. The applicant is entitled to only be tried for the crime in which he was charge and not for being a criminal in general. See Brief of Support pages 31-37.

**GROUND: SEVEN:** THE APPLICANT CONTENDS THAT HIS CONVICTION IS VOID WHEN THE PROSECUTION PROMISED THE ACCOMPLICE-WITNESS SOMETHING OF VALUE FOR HER INCULPATORY TESTIMONY AGAINST THE APPLICANT IN VIOLATION OF 18 U.S.C.§201(C)(2).

## FACTS SUPPORTING GROUND:

The applicant contends that the testimony of Sonya Holder was purchased with a promise of leinancy by recieving probation for the crime and that he also was the only attacker that was convicted for the crime charged. See Brief in Support pages 37-39.

**GROUND: EIGHT:** THE APPLICANT CONTENDS THAT DUE TO THE DEFICIENT PERFORMANCE OF TRIAL COUNSEL HE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE WHICH CAUSED AN ACTUAL AND SUBSTANTIVE DISADVANTAGE TO THE APPLICANT IN RECIEVING A FAIR TRIAL.

## FACTS SUPPORTING GROUND:

The trial counsel failed in his duty to provide adquate assistance in helping client in recieving a fair trial. Failure to call expert witness, failed to call exculpatory witnesses, failed to object to extraneous offense testimony, failed to preserve error, failed to request specific instruction and object to the courts charge. See Breif in Support pages 39-50.

**GROUND:** NINE: THE APPLICANT CONTENDS THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL FOR FAILURE TO LITIGATE ALL AVAILABLE CLAIMS IN THE VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

## FACTS SUPPORTING GROUND:

The appellate attorney Honorable Linda Icenhauer-Rameriz failed to litigate all the available claims on direct appeal. See Brief in Support pages 50-53.

**GROUND: TEN:** THE APLICANT CONTENDS THAT FACTUAL INNOCENCE IS AN EXCEPTION TO THE AEDPA'S ONE YEAR STATUTE OF LIMITATIONS AND/OR IS A GATEWAY FOR REVIEW OF THE APPLICANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND EVIDENCE IS INSUFFICIENT TO ESTABLISH THE REQUISITE FINDING OF GUILT IN THIS CASE.

## FACTS SUPPORTING GROUND:

Since the federal court refused to entertain his writ due to the time bar issue due to the actions of the district court clerk in Travis County for not filing his application when it was recieved he was penalized by that 5 month interval. Along with the ineffective assistance of counsel and with the alibi witnesses this satifies the cause and prejudice standard to have this issue heard in court and the applicant is satifying the exhaustion requirement before he can go to federal courts.  See Brief in Support pages 53-70.

**GROUND:** TWELVE: THE APPLICANT CONTENDS THAT THE STATE FAILED TO OBJECT TO THE COURT'S CHARGE THEREBY FAILED TO PRESERVE ERROR FOR APPELLATE REVIEW WHICH THEN

SUSTAINS THE CONVICTION IN VIOLATION OF APPLICANT'S DUE PROCESS RIGHT OF LAW AND DUE COURSE OF LAW RIGHTS AND DENIED HIM A FAIR TRIAL.

## FACTS SUPPORTING GROUND:

The avers that the hypothetically correct jury charge it had written was erroneous

and that the State failed to object as well as the defense. See Brief in Support

pages 73-76.

**GROUND:** TWELVE: THE APPLICANT CONTENDS THAT THE APPELLATE COURT MISAPPLIED THE STANDARDS OF NEIL V. BIGGERS, IN THE AFFIRAMTION OF THE APPELLATE REVIEW.

## FACTS SUPPORTING GROUND:

The applicant contends that the appellate court did not follow all five factors of the Supreme Court case as stated above in the determination of the use of the use of the photo line-up of the in-court identification. See Brief in Support pages 70-73.

# VERIFICATION
(Complete <u>EITHER</u> the "oath before a notary public" <u>OR</u> the "inmate's declaration.")

## OATH BEFORE NOTARY PUBLIC

STATE OF TEXAS, COUNTY OF _____.

_____, BEING FIRST DULY SWORN, UNDER OATH, SAYS:

THAT HE/SHE IS THE APPLICANT IN THIS ACTION AND KNOWS THE CONTENT OF

THE ABOVE APPLICATION AND ACCORDING TO APPLICANT'S BELIEF, THE FACTS

STATED IN THE APPLICATION ARE TRUE.


_____
Signature of Applicant

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____.


_____
Signature of Notary Public


## INMATE'S DECLARATION

I, <u>Robert Lee Brown</u>, BEING PRESENTLY

INCARCERATED IN <u>Eastham Unit. Lovelady Texas</u>, DECLARE UNDER

PENALTY OF PERJURY THAT, ACCORDING TO MY BELIEF, THE FACTS STATED IN

THE APPLICATION ARE TRUE AND CORRECT.


SIGNED ON _May 28, 2009_.

_____
Signature of Applicant


11

APPENDIX

99-2731741

### EVIDENCE Box 158
### CHAIN OF CUSTODY

| IMPOUNDING OFFICER | | DATE | TIME |
|---|---|---|---|
| 1. R. GAY #979 | | 10-4-99 | 130P |
| RELEASED TO | RELEASED BY | DATE | TIME |
| 2. JH 627 | | 10/5/99 | 0915 |
| 3. FED 2062 | | 0301-00 | 1125 |
| 4. DX5 979 | | 5-1-00 | 1425 |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |

STATE'S EXHIBIT #22

TEXAS DEPARTMENT OF CRIMINAL JUSTICE — INSTITUTIONAL DIVISION
# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ☐ Unit Assignment, Transfer (Chairman of Classification, Administration Building)

2. ☐ Restoration of Lost overtime (Unit Warden-if approved it will be forwarded to the State Disciplinary Committee)

3. ☐ Request for Promotion in Class or to Trusty Class (Unit Warden-if approved, will be forwarded to the Director of Classification)

4. ☐ Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles. 8610 Shoal Creek Blvd. Austin, Texas 78711)

5. ☐ Visiting List (Asst. Director of Classification, Administration Building)

6. ☐ Parole requirements and related information (Unit Parole Counselor)

7. ☐ Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)

8. ☐ Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)

TO: _Mrs. Short / Mailroom_
(Name and title of official)

DATE: _07-06-06_

ADDRESS: _Jordan Unit_

**SUBJECT:** *State briefly the problem on which you desire assistance.*

In Short, this is my third I-60 to you. I'm trying to get my case back in Court and I need to know the date my 11.07 was mailed from the Unit. It was mailed to Ms. Amalia-Rodriguez Mendoza District Clerk of Travis County, Texas, the day I went to the law library to mail my 11.07 Habeas Corpus off was January 29, 2002. All I need to know is the date it was mailed from the Unit. Will you please write me back and let me know please. I'm trying to get Access to Court. Will you please look at the log Book and let me know what date it was mailed please.           Thank you!

Name: Robert Lee Brown          No: 927914          Unit: Jordan

Living Quarters: I-221-T          Work Assignment: Boot factory

**DISPOSITION:** (Inmate will not write in this space)

Our 'log' shows it left the unit
in January 27th 2002.

K. Fuller

I-60 (Rev. 11-90)

[EXHIBIT C]

TO:      Troy C. Bennet Jr.
Clerk Of Criminal Appeals
In And For State Of Texas
Capitol Station
Austin, Texas 78711


RE:      Robert Lee Brown, Cause Number: 03-99-00534-CR & Trial
Court No.: 00-2368


STYLE:   Robert Lee Brown, Applicant
VS.
The State Of Texas


DATE:    March 21, 2002


Dear Clerk:

    On January 29, 2002 I mailed an original writ of habeas corpus with a copy for the trial clerk to stamp or file mark my copy and return it to me. As of this date I have not received my copy of the 11.07 nor any notice that the trial clerk forwarded the original to your office. This brings the total days to 59 days. Please advise me whether you have received the original 11.07 and the date you filed said writ. If you have not received the 11.07 then please write the trial clerk for her to send it to you and forward my copy file marked to me.

Sincerely,

*Robert Lee Brown 3-21-02*
Robert Lee Brown, Counsel Pro Se
TDCJ-ID.,NO.927914
Jordan Unit
1992 Hilton Road
Pampa, Texas 79065-9696


CC:'S:   Trial Judge, Michael P. Lynch
167TH Judicial District Court
Travis County Courthouse
P.O. Box 1748
Austin, Texas 78767


RLB/lww: file

Robert Lee Brown #927914
Jordan Unit
1992 Hilton Rd.
Pampa, TX. 79065

March 27, 2002


Amalia Rodriguez-Mendoza
District Clerk
Travis County
P.O. Box 1748
Austin, Texas 78767

RE: Ex Parte Robert Lee Brown   Cause No. 002368


Dear Mrs. Mendoza,

    Please be advised that it has been 48 days since I have mailed you my 11.07 Application for Habeas Corpus in the above cause no. I am aware that your Court recieved the Writ no later than February 4th of this year, by the latest I should have had a response from the State by no later than February 18, 2002. And I should have heard from the Court's Recommendation no later than March 13, 2002. This is to inform you that I have not recieved neither one and that is including the number of the Writ once it was filed. Could you please inform me of the status of the Writ. I am thanking you in advance for your cooperation on this matter.


                Respectfully Submitted,

                Robert Lee Brown #927914
                Applicant Pro-Se.


CC: File

Robert Lee Brown #927194
Jordan Unit
1992 Hilton Rd.
Pampa, TX.  79065

Date: April 10, 2002.

District Clerk
Amalia Rodriguez-Mendoza
Travis County
P.O. Box 1748
Austin, TX..78767

RE: Ex Parte Robert Lee Brown  Cause No.  002368

Dear Mrs. Mendoza,

        Please be advised that this is my second request for the cause no., and the status on my 11.07 Writ of Habeas Corpus. I have still not recieved a response from your office. I would like to be informed of the Status of the 11.07. I am waiting patiently for a response from you. I want to make sure that I will not get time barred from my Federal Petition.

                                        Respectfully Submitted,

                                        Robert Lee Brown #927914
                                        Applicant Pro-se

CC: FILE

Robert Lee Brown #927194
Jordan Unit
1992 Hilton Rd.
Pampa, TX. 79065

Date: May 1, 2002.

Travis County District Clerk
Amalia Rodriguez-Mendoza
P.O. Box 1748
Austin, TX. 78767

RE: Ex Parte Brown   Cause No. 002368

Dear Mrs. Mendoza,

Please be advised that this is my 3rd notice requesting any and all status on my 11.07 Writ of Habeas Coprus. Why is it taking so long to have it filed? Could you please let me know? The Writ was mailed from my unit on the 27th of January, surely it does not take this long to put a file stamp on it and allow the Court to rule on it?

Respectfully Submitted,

Robert Lee Brown #927194

CC: FIle



[EXHIBIT G]

*Robert Brown*
*927914*

## COUNTY OF TRAVIS
## STATE OF TEXAS

**AMALIA RODRIGUEZ-MENDOZA**
District Clerk

P.O. Box 1748
Austin, Texas 78767

Tuesday, June 04, 2002

BROWN,ROBERT LEE
927914
K-201-B
1992 HILTON RD.
PAMPA, TEXAS 79065

     RE:  Application for Post Conviction Writ of Habeas Corpus
           Cause Number: 002368-A
           Ex Parte:  BROWN,ROBERT LEE
           In the 167TH Judicial District Court of Travis County, Texas

Dear Sir:

    Your application for post conviction writ of habeas corpus has been received and filed on 06/04/2002, and bears the above cause number.

    A copy of your application for post conviction writ of habeas corpus has been forwarded to the District Attorney of Travis County, Texas.

                         Respectfully,

                         AMALIA RODRIGUEZ-MENDOZA
                         District Clerk, Travis County, Texas

            By: _____
               Deputy

copy to:  District Attorney, Travis County, P.O. Box 1748, Austin, TX 78767

Robert Lee Brown #927194
Jordan Unit
1992 Hilton Rd.
Pampa, TX. 79065

Date: June 10, 2002

Travis County District Clerk
Amalia Rodrigues-Mendoza
P.O. Box 1748
Austin, TX. 78767

RE: Cause no. 002368-A

Dear Mrs. Mendoza,

    I thank you for your response to my letter dated May 1, 2002. Thank you for letting me know the status on my Writ. I have but one question? It took 124 days from the time it left my unit that my Writ was file stamped, will and how will this affect my Federal time clock for my §2254 Petition?

Respectfully Submitted,

Robert Lee Brown #927194
Applicant Pro-Se

CC: FILE

[EXHIBIT I]

CRIMINAL JUSTICE CENTER

Po Box 1748   509 W. 11TH

AUSTIN TX 78767

11.07 WHOLE

11.34 DISOBEYING WRIT

11.35 FURTHER PENALTY FOR DISOBEYING WRIT

11.60

11.61

D.A. Mr. RONALD D. EARLE, the DISTRICT COURT and yourself are in violation of C.C.P. Chapter 11.07, Art 11.34 DISOBEYING Writ. By refusing to except my Writ of Habeas Corpus. I mailed my Writ of Habeas Corpus 11.07 on 30th of January 2002. After 30 days I wrote to the DISTRICT CLERK AMELIA RODRIGUEZ - MENDOZA, but I recieved no reply. This only tells me that the DISTRICT COURT is in violation C.C.P. Art 11.61 Refusal to obey Writ. It states "Any officer to whom a Writ of Habeas Corpus, or his power, control or restraint, who refuses to obey a Writ of Habeas Corpus or who evades the service of the same or places the person illegally detained under the control of another, removes him, or in any other Manner, attempt to evade the operation of the Writ of Habeas Corpus, Shall be dealt with as 11.60 Any officer to whom a Writ of Habeas Corpus Provide in Art 11.34 of this code.

I strongly believe that my due process of Law, has been violated pursuant to C.C.P. 1.04. Mrs MENDOZA, DISTRICT responded to my Letter I sent JUNE 2, 2002, that I recieved my Writ of Habeas Corpus, June 4, 2002 THIS IS NOT TRUE. As stated above I mailed my Writ 11.07 on the 30th of JANUARY, 2002, which was on a Wensday.

THIS MAKES MY WRIT BEING RECIEVED 2 DAYS AFTER BEING MAILED ON SAID DATE...

Mrs. MENDOZA, is in violation of PENAL CODE $ 37.10 TAMPERING WITH GOVERNMENTAL RECORD, P.C. 37.10 A.(1), (2), (5), D. I recieved no reply, the DISTRICT COURT or DISTRICT CLERK, for FOUR (4) MOS. Until recently; when I wrote on JUNE 2, 2002, I strongly believe that this is a tactic in prolonging my due process of Law, and a violation of my TEXAS and U.S. CONSTITUTIONAL RIGHTS. Your THIRTY FIVE DAYS HAS PASSED BY THREE (3) MOS, A VIOLATION OF C.C.P. 11.07 Sec 2, C, D.

Respectfully yours
ROBERT LEE BROWN

Robert Lee Brown Jun 16, 2002
RUFE JORDAN UNIT
1992 HILTON RD
PAMPA TX 79065

Date Executed June 16, 2002

CAUSE N° 002368-A.

AMALIA RODRIGUEZ-MENDOZA          Aug 9, 2002.
District Clerk. TRAVIS County
P.O Box 1748                      court recer 167
Austin, Texas.                   Austin TX

Ex-Parte ROBERT LEE BROWN

V

THE STATE OF TEXAS


RE: Reponse and Status of Writ of Habeus Corpus


Dear Ms Amalia Rodriguez. Mendoza

   Now Come Robert Lee Brown T.D.C N° 927914 is
the indiviual mention above on the styled and numbered
My records reflects that 35 days has passed since I filed
my writ of Habeus Corpus [11.07] on Jan 30th 2002. I recieved
your correspondence letter dated June 4, 2002. You stated that
your office had just recieved my post conviction writ-of Habeas
Corpus. on this date. Five month after I mailed it out. I have not
heard no response from you or the District Attorney on what
decision he or the district Judge. Michael Lynch          of the 167th
District Court. Pursuant to Art 11.07 Sec 3.0, and sec 6(a). sec 7(a)
The district clerk has a duty to inform applicant of such a - Sec 6
finding or if an evidentary hearing is to be held.

   Ms Mendoza I am inguiring as to the status of my writ of
Habeus Corpus (11.07). The following are date of all of my filing

IN THE 167th DISTRICT COURT
OF TRAVIS COUNTY TEXAS

EXPARTE ROBERT LEE BROWN

V          CAUSE #002368-A

THE STATE OF TEXAS

RESPONSE AND STATUTE OF WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME ROBERT LEE BROWN TDCJ ID#927914, is the individual mentioned above on the styled and number.

My records shows that 35 days has passed since I filed my Writ of Habeas Corpus (11.07), on Jan 30th, 2002. I recieved a letter dated June 4th, 2002. It was stated that the Clerk's office (AMALIA RODRIGUEZ-MENDOZA) had just recieved my post conviction, Writ of Habeas Corpus on said date. FIVE MONTHS AFTER I MAILED IT OUT. I have not heard no other response from you or the Clerks Office, or the DISTRICT ATTORNEY on what decision was made through them, and or even the DISTRICT JUDGE MICHAEL LYNCH, of the 167th DISTRICT COURT.

PURSUANT to Art. 11.07 Sec 3.0, Sec 6, Sec 7.

The DISTRICT CLERK has a duty to inform applicant of such a finding or even if a hearing is to be held.

The following is dates of my filing, pertaining my Writ of Habeas Corpus, 11.07...

(1) On January 30th, 2002, I filed original Writ of Habeas Corpus.

(2) On MAY 29, 2002 I filed a Writ of MANDAMUS to the COURT of CRIMINAL APPEALS.

(3) I wrote the TRAVIS COUNTY CLERKS OFFICE, requesting the Statutes of my Writ of Habeas Corpus, on JUNE 3 2002

(4) Again on Aug 9th, 2002, I wrote a correspondance letter to the TRAVIS COUNTY CLERKS OFFICE, requesting statutes of my Writ of Habeas Corpus.

Please forward copys of this letter to the Judge of Court-room 167th DISTRICT COURT, and also to the District Attorney as well.

My next step is filing, Federal Writ of Habeas Corpus along with denial of State pertaining to DUE PROCESS, and CONSTITUTIONAL LAWS, and RIGHTS, as well as DUE COURSE OF LAW.

Respectfully yours
ROBERT LEE BROWN #927914

Robert Lee Brown 08/14/02
RUFE JORDAN UNIT
1992 HILTON RD
PAMPA TX 79065

DATE EXECUTED
08/14/02

[EXHIBIT L]

## CHRONOLOGICAL TIMELINE

### STATE

| | | |
|---|---|---|
| Convicted and Sentenced | May 10, 2000 | |
| Direct Appeal filed | January 29, 2001 | |
| Appeal affirmed | July 26, 2001 | |
| Motion for Extension of Time for P.D.R. | August 17, 2001 | |
| Granted until | October 26, 2001 | |
| Mandate issued | November 9, 2001 | |
| Application for 11.07 filed | January 27, 2002 | See Exhibit B |
| Recieved in District Court | January 31, 2002 | |
| Letter to Court of Criminal Appeals | March 21, 2002 | See Exhibit C |
| Letter to Travis County District Clerk | March 27, 2002 | See Exhibit D |
| Letter to Travis County District Clerk | April 10, 2002 | See Exhibit E |
| Letter to Travis County District Clerk | May 1, 2002 | See Exhibit F |
| Letter from District Clerk | June 4, 2002 | See Exhibit G |
| Letter to Travis District Clerk | June 10, 2002 | See Exhibit H |
| Letter to Travis County District Clerk | June 16, 2002 | See Exhibit I |
| Letter to Travis County District Clerk | August 9, 2002 | See Exhibit J |
| Motion of Response and Statute of Writ of Habeas Corpus | August 14, 2002 | See Exhibit K |
| Writ of Mandamus filed | May 29, 2002 | |
| Writ of Mandamus and 11.07 denied | September 11, 2002 | |
| 11.07 Writ of Habeas Corpus recieved at C.C.A. | August 5, 2002 | |

### FEDERAL

| | |
|---|---|
| Writ of Habeas Corpus §2254 filed | March 10, 2003 |
| Report and Recommendation | March 19, 2003 |
| Objection to R & R | April 9, 2003 |
| Objection Overruled | April 11, 2003 |
| Order denying Writ for Time Bar | April 11, 2003 |
| Motion for Rehearing | April 25, 2003 |
| Denied | May 5, 2003 |
| Notice of appeal | May 15, 2003 |
| Petition for COA | June 30, 2003 |
| Mandate issued | October 22, 2003 |
| Writ of Certeorari | Jan 14, 2004 |
| 60B Motion | March 30, 2004 |
| denied (Writ of Certeorari) | May 14, 2004 |
| Notice of appeal of | .!. . ., .:\. |
| 60 B Motion denied | June 3, 2004 |
| Notice from 5th Circuit | June 29, 2004 |
| COA due | August 8, 2004 |
| IFP filed | July 22, 2004 |
| denied as moot | July 23, 2004 |
| Notice of appeal | July 6, 2004 |
| Petition for Authorization | July 26, 2004 |
| 60b motion denied | August 4, 2004 |
| Petition for Authorization denied | September 8, 2004 |

CHRONOLOGICAL TIMELINE

Request for IFP filed                          April 12, 2005
Request for successive Petition                August 7, 2006
Petition for Authorization                     August 31, 2006
Order to consider Successive Application       November 8, 2006
and Sanction warning issued

STATE

Second 11.07 Application filed                 August 19, 2008
Findigs of facts                               September 24, 2008
Filed to CCA                                   October 16, 2008
Filed motion to dismiss 11.07
application                                    October 19, 2008
Dismissed under 11.07 §4                       October 24, 2008
dismissed without written order                November 19, 2008



**STATE LAW LIBRARY**
PO BOX 12367
AUSTIN, TEXAS 78711-2367

To: Robert Lee Brown - # 927914
Date: 3/2/2009
From: *Inmate Copy Service*

Re: PD-1613-01: Docket Sheet.

Thank you for your request for copies dated February 27, 2009. Unfortunately, we are unable to process your request as we received it.

We are unable to locate a docket sheet for your PDR filings. Please find enclosed a print out of CCA's Case Events for PD-1613-01. Your motion for Extension of Time was disposed on 08.17.2001 and time to file was extended until 10.26.01. Enclosed is an estimate for copies of your Motion for Extension of time and Motion to File Fewer Copies. Letters from CCA granting these motions are included with these documents.

The State Law Library accepts requests for photocopies of material held in our collection (with specific cites) or court records held by the Court of Criminal Appeals of Texas or the Third Court of Appeals.

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

RE: Writ No. 52,699-01
STYLE: Robert Lee Brown
TRIAL CT NO:
September 11, 2002

This is to advise that the Court has denied without written order the motion for leave to file original application for writ of mandamus.

INTERAGENCY MAIL
TDCJ COURIER

ROBERT LEE BROWN   TDC# 927914
056   JORDAN UNIT
1992 HILTON ROAD
PAMPA   TX   79065   F2-08

THE APPLICANT CONTENDS THAT NON-ACCOMPLICE EVIDENCE WAS INSUFFICIENT TO THEN CORROBORATE THE ACCOMPLICE WITNESS TESTIMONY AND CONNECT THE APPLICANT TO THE OFFENSE, RESULTING IN INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.

ARGUMENT AND AUTHORITIES:

A conviction cannot be had upon the testimony of an accomplice witness unless corroboration by other evidence tending to connect the applicant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. Tex.Code.Crim.Proc.Ann. Art. 38.14 (Vernon 1979).

The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the applicant with the offense. Martinez v. State, 163 S.W.3d 92 (Tex.App.Amarillo 2005); McDuff v. State, 939 S.W.2d 607, 613 (Tex.Crim.App.1997); Burks v. State, 867 S.W.2d 877, 887 (Tex.Crim.App.1994).

In order to then determine whether the accomplice witness testimony is corroborated, the court is then required to eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect the applicant to the offense. Martinez, supra at 92; Munoz v. State, 853 S.W.2d 558, 559 (Tex.Crim.App.1993).

NON-ACCOMPLICE EVIDENCE PRESENTED

The State presented three (3) wintesses in this case. The three witnesses did give live testimony. The jury was instructed that Sonya Holder was an accomplice. (Court's Cherge P. 96). There was non-accomplice testimony that tended to connect the applicant to the crime. The State's witness Pete Arevalo testified that the applicant was the one who was holding the pistol during the robbery. (RR4: 211-216) The non-accomplice testimony and evidence was as follows:

DETECTIVE ROY GAY

Testified that he interviewed the victim several days after the offense. During the conversation, the victim related how Sonya Holder and three black males had come to his home and robbed him. (RR4: 131-134) The victim brought in pieces of a handgun which the robbers had allegedly used to beat him which had broken into several pieces during the assault. Gay testified that this weapon, State's exhibit #22, was a deadly weapon. (RR4: 138-144) Gay testified after he talked to the victim, he had an arrest warrant issued for Sonya Holder.

When she was arrested, he then interviewed her and then she identified all the persons with her during the robbery as Robert, Sean, Quincy. She did not know their last names but she thought Robert's last name was Caldwell and he had a half-brother named Kevin Caldwell. With that information, Det. Gay was able to come up with the name of Robert Brown, the Applicant. He showed Holder State's Exhibit 24, a picture of Applicant, and she identified him as the Robert who had participated in the robbery. Det. Gay then made a photographic line-up containing Applicant's photo which he showed the victim. After the victim picked Applicant out, Det. Gay obtained an arrest warrant for Applicant. (RR4: 147-159). Det. Gay also testified that the shotgun was later recovered on October 26, 1999, during a traffic stop of an unamed individual. (who later turned out to be Albert Edwards). The serial number that was found on the shotgun in the car matched the serial number furnished by the victim. State's Exhibit 23, the shotgun, was admitted into evidence and Det. Gay testified that State's Exhibit 23, was a deadly weapon. (RR4: 161-166).

VICTIM: PETE AREVALO

testified that he had known Sonya Holder for approximately four years as a prostitute. (RR4: 190-192) (Sonya Holder testified that she was 21 years old when she was on the stand, that makes her 17 years old when she was first having sex for drugs with the victim who was 56 years old at the time) He related that on the night of September 29, 1999, Holder came to his door at around 10:30 p.m. and asked to use the bathroom. When he opened the door, Holder walked in, followed by two men who said they had a pistol they wanted to sell to him. They showed him a chrome pistol and when the victim told them that he was not interested, one of the men began to hit him with the pistol in the head while the other man held him. The man stopped hitting him with the pistol and pointed the gun at him and demanded that he show them where he kept his money.

The victim began fighting back and he was struck again. The victim told the men that there was money in his bedroom, so the man with the gun went into the bedroom and began looking for the money. When he could not find it, he became more upset. The victim was able to break free from the second robber who had been holding him and he ran for his shotgun which was in the bedroom. He was able to get it and then a struggle ensued between him and the two robbers over the shotgun. During the struggle the victim was knocked onto his bed. The man who had been holding him climed on top of the victim while the other man began hitting him with the pistol. At this time, the

2.

victim saw a third man standing in the doorway. He yelled something and the man was on top of the victim ran out of the room. The man with the pistol was able to get the shotgun away from the victim and he pointed the shotgun at the victim and attempted to fire it; however, the shotgun misfired.

When this occurred the robber ran out of the room with the shotgun. The victim testified that he never got a good look at the third robber. After the robbers left his home, he shut the door and called the police. (RR4: 193-208). During his testimony, the victim identified Applicant as the individual who had the pistol during the robbery. (RR4: 211-216).

ACCOMPLICE WITNESS RULE

Article 38.14 of the Texas Code of Criminal Procedure, forbids any conviction on the uncorroborated testimony of an accomplice witness. It is also provided that evidence that shows only the commission of the crime is insufficient corroboration.

REASONS FOR THE RULE

The accomplice witness rule is a legislative creation, and is not required by "the common law". Holladay v. State, 709 S.W.2d 194, 197 (Tex.Crim.App.1986). The Court of Criminal Appeals has noted the reasons for the rule:

> The rule's roots can be traced to common law, where interested parties were precluded from testifying in both criminal and civil cases—"fear of perjury was the reason for the rule." The United States Supreme Court recognizes the basis of such rules were to set aside a class of persons who were more than likely to commit perjury than other witnesses. This suspicion and fear of perjury is not without reasons.
> Accomplices often strike bargins with the State, where the prosecutor agrees to a favorable sentencing recommendation in exchange for the accomplice's testimony against the other person. Courts have recognized that a plea bargin contains a degree of compulsion. In addition, those accused of crimes tend to try to place the responsibiltiy for the crime that was committed on the other participants while downplaying their own participation, often in order to avoid the consequences of criminal acts. For these reasons, and to protect the criminal defendants in each case. The legislature has determined that uncorroborated testimony of an accomplice is not enough to support a criminal conviction.

Blake v. State, 971 S.W.2d 451, 454 (Tex.Crim.App.1998).

"The rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." Blake, supra at 454.

> An accomplice witness has been described as a discredited witness. It has frequently been said that the testimony of an accomplice witness

3.

is untrustworthy and that it should be recieved and viewed and acted on with caution...[T]he testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he or she might have, but because his or her testimony is from a corrupt source.

Paulus v. State, 633 S.W.2d 827, 843 (Tex.Crim.App.1981).

"[S]uch a person who testifies for the prosecution is infamous and her testimony is considered so untrustworthy a conviction should not be based solely upon that testimony. Because such a witness is usually deemed to be corrupt, his testimony is always looked upon with suspicion." Holladay, supra at 196. A accomplice is considered to be a discredited witness, and her testimony is to be scrutinized because of her possible interest in the outcome of the trial in order to "minimize the danger that an accomplices self-interest might motivate her to falsely implicate others in her crime in order to deflect blame and punishment from herself." Jester v. State, 62 S.W.3d 851, 855 (Tex. App.-Texarkana 2001); Reyna v. State, 22 S.W.3d 655, 658 (Tex.App.-Austin 2000); See also 7 Wigmore on Evidence §2057 at 417 (Chadbourn rev. 1978).

The Legislature has implemented and codified these beliefs about accomplice witness testimony by enacting Art. 38.14 and its predecessor statutes. Holladay, supra at 196.

INTERPRETATION OF THE ACCOMPLICE WITNESS RULE

Who is an accomplice?: In Blake, the Court of Criminal Appeals explained:

Our case law has clearly defined who is subject to the accomplice witness rule. A person who is merely present at the scene of the offense is not an accomplice; an affirmative act or omission is required.
An accomplice participates before, during, or after the commission of the crime-presence at the scene of the crime is not required- though one is not an accomplice for knowing about a crime and failing to disclose it, or even concealing it.

Blake, supra at 454.

"An accomplice witness...must be subject to prosecution for the offense thats committed." Moron v. State, 779 S.W.2d 399, 401 (Tex.Crim.App.1985); see also, Creel v. State, 754 S.W.2d 205, 213 (Tex.Crim.App.1988)("One is not and 'accomplice witness' who cannot be prosecuted for the offense for which the accused is charged," nor one who did not act with the requisite mental state for that particular offfesne). "[A] person is an accomplice witness if there is sufficient evidence connecting them to the criminal offense as a blameworthy participant." Blake, supra at 455; see also, Paredes v. State, 129 S.W.3d 530, 536 (Tex.Crim.App.2004); Creel, supra at 213; see also Kunkle v. State, 771 S.W.2d 435, 439 (Tex.Crim.App.1986); Singletary v. State, 509 S.W.2d

4.

572, 575 (Tex.Crim.App.1974).

To determine if someone is an accomplice, the Court should examine "the record for evidence of their participation in the crime," but it is irrelevant whether they were actually charged-"what matters is the evidence in the record." Blake, supra at 455. Even if a person is an accomplice with an accused in the commission of other offenses, she is not an accomplice in an offense unless thereis a "showing of her complicity in the offense," i.e., the offense on trial. Caraway v. State, 550 S.W.2d 699, 702 (Tex.Crim.App.1977); Easter v. State, 536 S.W.2d 223, 228-29 (Tex.Crim.App.1976). To render one accomplice, there must be record evidence showing an "affirmative act on [the alleged accomplice's part] to assist in" the offense. Caraway, supra at 702, citing Chappell v. State, 519 S.W.2d 453, 460 (Tex.Crim.App.1975).

Evidence that fails to show participation in planning or promoting the the offense is insufficient to render one an accomplice. Caraway, supra at 702, citing Cross v. State, 550 S.W.2d 61 (Tex.Crim.App.1977). "[T]he fact that the witness was present when the crime was committed does not compel the conclusion that she was an accomplice witness," so the mere fact that a witness was present with the parties who committed the crime before the commission of the offense does not render one an accomplice. Caraway, supra at 702, citing Quintanilla v. State, S.W.2d 329, 331 (Tex.Crim.App.1973); Colunga v. State, 527 S.W.2d 285, 286-87 (Tex.Crim.App.1975).

TYPES OF ACCOMPLICES

An accomplice witness may be either an accomplice as a matter of fact or as a matter of law. Blake, supra at 455.

ACCOMPLICES AS A MATTER OF lAW:

A person indicted for the same offfense as the defendant is an accomplice as a matter of law. Solis v. State, 792 S.W.2d 95, 97 (Tex.Crim.App.1990); Barrara v. State, 42 Tex. 260 (1875). When evidence shows that a witness is an accomplice as a matter of law, the trial court should instruct the jury that:

(1) it may not convict on that witness's testimony unless evidence from a non-accomplice source needs to connect the defendant to the crime, and

(2) evidence merely showing the commission of the offense is insufficient to corroborate an accomplice's testimony.

Blake, supra at 455; Article 38.14 T.C.C.P.

ACCOMPLICES AS A MATTER OF FACT

5

On the other hand:

[i]f the evidence presented by the parties is conflicting, and it is not clear whether the witness is an accomplice, the jury must initially determine whether the witness is an accomplice as a matter of fact. If the evidence is conflicting, it is proper to leave the question of whether an inculpatory witness is an accomplice witness as a matter of fact under instructions defining the term accomplice.

Blake, supra at 455.

That is, if some evidence raises an issue as to whether a witness was a blameworthy participant in the crime, an accomplice-as-a-matter-of-fact instruction should be given. It is axiomatic that if no evidence raises an issue, no such instruction is required. See and compare, e.g., Medina v. State, 7 S.W.3d 633, 641 (Tex.Crim.App.1999); Smith v. State, 721 S.W.2d 844, 851 (Tex. Crim.App.1986).

THE DISTINCTION BETWEEN TYPES OF ACCOMPLICES IS VERY IMPORTANT:

It is important to distinguish between witnesses who are accomplices as a matter of law and witnesses who may be accomplices as a matter of fact. Unless a witness is an accomplice as a matter of law, the jury will determine whether the witness is, in fact, an accomplice whose testimony is not, in fact, an accomplice, they need not find corroboration of her before relying upon it, in fact, corroborate true accomplice witnesses' testimony. See e.g., Solomon v. State, 49 S.W.3d 356, 362-63 (Tex.Crim.App.2001).

THE ACCOMPLICE WITNESS JURY CHARGE INSTRUCTION AND ITS PURPOSE:

The Court of Criminal Appeals has recently spoken of the accomplice-witness instruction's purpose:

The prupose of the [accomplice witness] instruction, therefore is not to casr suspicion on the testimony provided by the accomplice or to encourage jurors to give it less weight than other testimony. Rather, the instruction merely reminds the jury that it cannot use the accomplice testimony to convict the defendant unless there also exists some non-accomplice testimony tying the defendant to the offense.

Cocke v. State, 201 S.W.3d 744, 747 (Tex.Crim.App.2006); Herron v. State, 86 S. W.2d 621, 632 (Tex.Crim.App.2002).

If an accomplice witness instruction is given regarding a particular witness, though the evidence did not raise the instruction, the witness is still not an accomplice, and her testimony may be used to corroborate the testimony of the true accomplices. Solomon, supra at 362.

MEASURING THE SUFFICIENCY OF CORROBORATION OF ACCOMPLICE-WITNESS TESTIMONY:

"The accomplice witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define

6

the legal and factual sufficiency standard." Cathey, supra at 463; Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The "accomplice witness statute simply requires 'other evidence' meaning some non-accomplice evidence"; though there is no "practical difference between the statutory standard and reviewing evidence 'in the light most favorable to the verdict,'" the accomplice witness rule is not based "upon federal constitutional principles." Cathey, supra at 463. "'The corroborating evidence must simply-in some general, perhaps "significant," way-as a matter of logical relevance tend to show that the accused was involved in the behavior constituting the charged offense.'", quoting Dix and Dawson, Texas Practice and Procedure, Vol. 42, §31.201, p. 273 (1995). The sufficiency of evidence to corroborate accomplice-witness testimony is assessed under the "hypothetical correct jury charge" standard applicable to all evidentiary sufficiency reviews. See Malik, supra at 240.

MUST TEND TO CONNECT APPLICANT TO OFFENSE, NOT JUST CORROBORATE ACCOMPLICE TESTIMONY:

It is well established that evidence corroborating the accomplice's testimony but not tending to connect the Applicant to the offense is insufficient "no matter how much credit the jury might have given to such testimony." Paulus, supra at 843. And, "although an accomplice witness may state any number of facts that are corroborated by evidence of other witnesses, still the facts thus corroborated do not tend to connect the Applicant with the crime, then corroboration on that basis would not meet the requirements of Article 38.14." Castaneda v. State, 682 S.W.2d 535, 538 (Tex.Crim.App.1984). "[A]ny evidence which verifies extraneous matters without tending to connect the accused to the actual crime charged is insufficient." Walker v. State, 615 S.W.2d 728, 733 (Tex.Crim.App.1981).

> It was also pointed out [in Phillips' Treatise on Evidence] that a distinction lies between confirmation as to the circumstances of the offense and confirmation affecting the applicant's connection to the offense. Confirmation merely as to the circumstances of the offense is really no confirmation at all. Confirmation as to the applicant's only connection to the offense, however, should be by independant evidence from which the jury may reasonably be satisfied, apart from the accomplice testimony, the applicant's connection to the offense.

Holladay, supra at 199.

"The phrase 'tending to connect' has the ordinary dictionary definition, 'to serve, contribute or conduce in some degree or way...to have a more or less direct bearing or effect,' and, while not contemplating conjecture,

7

'has some tendency to prove the averments in the indictment.'" Holladay, supra at 198.

In Hernandez v. State, 636 S.W.2d 617, 621 (Tex.App.-San Antonio 1982), the San Antonio Court of Appeals stated, "there can be no conviction on the testimony of accomplice alone, no matter how many there may be, if their testimony is not corroborated by evidence apart from accomplice testimony." This proposition, while not directly taken from prior case law, seems to be an accurate interpretation of current law interpreting Art. 38.14.

"The accomplice witness rule prevents...obtaining a conviction solely upon the word of a confederate of the accused. There must be other independent evidence or the accused may not be convicted." Moron, supra at 401. Before a conviction may be based upon an accomplice's testimony, "there must be corroborating evidence, other than the testimony of the accomplice witness which tends to connect the applicant with the offense."

ARTICULATING THE STANDARD OF REVIEW FOR SUFFICIENCY OF CORROBORATION:

The statute "requires that the testimony of the accomplice witness be eliminated from consideration while the testimony of the other witnesses is examined for evidence of an incriminating nature tending to connect the accused with the commission of the offense." Caraway, supra at 702; Moron, supra at 401; Paulus, supra at 843; Edwards v. State, 427 S.W.2d 629, 632 (Tex.Crim. App. 1968) Castaneda, supra at 537. The reviewing Court should consider the combined weight of all non-accomplice evidence, even if it is on the level of circumstantial. See e.g., Richardson v. State, 700 S.W.2d 591, 594 (Tex.Crim.App.1985); see also, Jackson v. State, 516 S.W.2d 167, 171 (Tex.Crim App. 1974) quoting Minor v. State, 108 Tex.Crim. 1, 299 S.W. 422, 428-29 (1927).

"All the facts and circumstances in evidence may be looked to for any corroboration, and the corroborative evidence may be circumstantial or direct. Furthermore, it is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt." Brown v. State, 672 S.W.2d 487, 488 (Tex. Crim.App.1984); Paulus, supra at 843, court may look to all facts and circumstances corroborating accomplice whether direct or circumstantial. Evidence corroborating accomplice-witness testimony "is sufficient if the combined cumulative weight of the incriminating evidence furnished by the non-accomplice witness tends to connect the accused with the commission of the offense." Romero, supra at 532.

8

The rule "does not demand that there be 'other evidence tending to connect the applicant with [the] offense committed.'" Holladay, supra at 204; Edwards, supra at 632; Minor, supra at 428; Cathey, supra at 462. "It is not necessary that the corroborating evidence directly link the accused to the crime or be sufficient in itself to establish guilt." Paulus, supra at 843. "Apparently insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of accomplice witness' testimony."

> The State is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is combined and cumulative weight of the evidence then furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof that confirms the testimony of the accomplice witnesses to material facts tending to connect the accused with the commission of the offense, the is satisfied.

Walker, supra at 731; Edwards, supra at 632; Minor, supra at 429.

EACH CASE MUST BE CONSIDERED ON ITS OWN MERITS:

Despite the many articulations of the standard and its boundaries and limits, "No precise rule can be laid down as to the amount of evidence that is required to corroborate the testimony of an accomplice, so as to sustain a conviction of the accused." Paulus, supra at 844. Each case must be consider on its own facts and circumstances.

> In sum, where the State relies upon an accomplice witness' testimony to convict the accused for a particular offense, the accomplice witness' testimony must be both material and must be corroborated by independent evidence tending to connect the accused to the crime. As to whether the evidence adduced is sufficient to corroborate testimony of the accomplice witness, such must, of course, be decided on an ad hoc basis.

Holladay, supra at 200.

TENDENCY TO CONNECT SUFFICIENCY STANDARD:

"Tendency to connect" rather than rational sufficiency is the standard [for corroboration of accomplice-witness testimony]: the corroborating evidence need not be sufficiency enough by itself to establish guilt." Solomon, supra at 361; Cathey, supra at 462. "The accomplice witness rule is satisfied if there is some non-accomplice evidence which tends to connect the accused to the commission of the offense alleged in the indictment." Hernandez v. State, 939 S.W.2d 173, 176 (Tex.Crim.App.1997). Circumstances not individually to corroborate accomplice witnesses testimony, may, when taken together, bre such that "rational jurors could conclude" it tends to connect the accused to the offense.

9

THE EVIDENCE IS INSUFFICIENT:

The sufficiency of the evidence must be measured against a "hypothetical-correct jury charge." Cathey, supra at 463; Malik, supra at 240. If the jurors had been instructed properly, they would have been instructed that if they believed Sonya Holder was an accomplice as a matter of law in the offense as that term had been defined for them, they could not convict on her testimony unless it was corroborated by other non-accomplice testimony. In the Court's Charge to the jury they were instructed that Sonya Holder was just an accomplice and as a result, the jury charge naming her as an accomplice was not correct.

Determining the strength of non-accomplice evidence requires examination of (1) its reliability or believeability and (2) the strength of its tendency to connect the Applicant to the crime. Herron, supra at 633(discussing issue in alleged jury-gharge error context). The "reliability inquiry may be satisfied if: (1) there is non-accomplice evidence, and (2) there is no rational and articulable basis for disregarding the non-accomplice evidence or finding that it fails to connect the applicant to the offense."

THE RELIABILITY INQUIRY

The Supreme Court set out five nonexclusive factors to be used to assess reliability testimony. Testimony is considered to be reliable if the totality of the circumstances reveals no substantial likelihood misidentification despite a suggestive pre-trial procedure.

(1) The opportunity of the witness to view the criminal at the time of the crime.

The victim described one robber as an 18 to 20 year old light skinned black male. He told police that the light skinned black male hit him in the head with the pistol and when the victim grabbed his shotgun, the light skinned black male took the shotgun away from him and left with it. The victim never described any of the assailants as having a beard or a mustache. (RR4: 93-110, 117-121). Detective Gay testified that the victim described his attackers as (1) a young male, 18 to 22, light-skinned, who initially beat him with the pistol and then took the shotgun from him and left with it; and (2) a darker skinned black male. Gay testified that the victim told him that he did not get a good look at the second individual and did not feel like he coould identify him. However, he knew that the second individual was very dark. (RR4: 170-172) On cross-examination, Detective Gay also admitted that Applicant is very dark skinned and at the time of trial had a full mustache and beard. (RR4: 172).

10

During his testimony, the victim identified Applicant as the individual who had the pistol during the robbery. (even after he testified that the one who beat him and had the pistol was light-skinned, 18 to 22 years of age, when in fact the Applicant was dark-skinned and 32 years of age when this crime was committed.)

In the light of the victim's vague and general description of the person who beat him with the pistol and fought with him over the shotgun as light-skinned and from the age 18 to 20. Every witness, including Detective Gay agreed that the Applicant is a very dark-skinned individual. Detective Gay even testified that the photograph was not an accurate portrayal of Applicant's true appearance in terms of skin color. The accomplice witness, Sonya Holder, testified that not only was Applicant very dark-skinned but he was "thirty-something."

(2) The witness's degree of attention.

The photo that the Detective used for identification of the Applicant as a light-skinned individual was just plain false, the trial court never made any specific findings regarding the victim's opportunity to view his assailant. However the record does show that the victim and the light-skinned individual struggled for several minutes. However it must be noted that much of the time during the struggle was spent wrestling over a shotgun common sense indicates that the victim was looking at the gun during this time and not at the assailant's face. Had he been paying more attention, he would have been able to give more detail.

The victim testified in court about the identification of the Applicant. I will never forget that man. Whenever he released--when he's released, if he should be released, he will remember me. They gave me a beating, a beating that I will never forget. This is not even human, to beat a person like that, break their teeth and 48 stitches and my body was bruised up. You think I'm going to forget that man? I will never forget that man. ...I still have him in my head-- photocopy of him in my head. (RR4: 234).

Yet, although the victim testified that the Applicant as his light-skinned young attacker, the evidence show that in fact the victim was able to give no details of the assailant's description. He did not recall if the attacker had facial hair (the Applicant has worn a full mustache and beard for some time); he could not describe any facial features; and he could not give a clothing description. But, yet he has a photocopy of him in his head.

11

(3) Accuracy of the victim's prior description of the criminal.

When initially asked to describe his assailant's by the officers who responded to the initial robbery call, the victim could only state that "there was a female that he knew and that there were three black males that accompanied her." (RR4: 101) Later at the hospital, the victim then described one of the robbers specifically "[a] a black male, 18 to 20 years of age, light skinned. (RR4: 106-108) He made no mention of the assailant having a beard or mustache and he could not describe any of the clothing worn by any of the three men. (RR4: 106) The victim's vague verbal description of the light-skinned attacker never changed. (RR4: 170) He did tell Detective Gay that he did not think he could recognize the dark-skinned man. (RR4: 172) Clearly, the victim's description of his main attacker was so vague and general that it could have applied to thousands of people. Yet, he had a photocopy of him in his head. (RR4: 234).

(4) The level of certainty demonstrated by the victim.

The victim appeared to be certain of his identification of applicant as the light-skinned attacker after he was shown the photographic lineup, his story changed compared to the other person that was with him, the other person—the other person black male that was with him, he was lighter colored, if you compare the other person with him, you would say he's light skinned. That's what they wanted. I mean, they wanted a description. One was darker than the other. The other one was darker. What am I suppose to say? Well, I mean, what am I supposed—how do—description that they want? (RR4: 235).

(5) The length of time between the crime and the confrontation.

This crime occurred on September 29, 1999 and the confrontation in the courtroom between Applicant and the victim occurred on May 2, 2000, and eight month interval. Applicant would point out that during this interval, the victim maintained his relatiosnship with the accomplice witness, Sonya Holder. This woman is responsible for his beating, why carry on a relationship with a person who caused you so much trauma. In fact both Holder and the victim, who had a relationship of prostitute-customer drug supplier prior to the crime admitted that the victim had visited Holder several times during her incarceration for this offense and in fact the victim had even put money on her account at the jail. (RR4: 83-84, 224-226) Certainly raises the issue that a possibility that some of their discussions during this eight month interval included Holder suggesting to the victim that Applicant was one

12

of her accomplices. Holder testified in response to questioning by both the State and the defense that she was recieving testimonial immunity in exchange for her testimony and it was also her hope that in exchange for her testimony against Applicant, that she would recieve probation. (RR4: 39-40, 72, 88).

CONCLUSION

The Applicant has proven through the proponderance of the evidence that accomplice witness and non-accomplice testimony was insufficient to support the conviction and request that a evidentiary hearing be held to determine the merit of the claim and if this reviewing court finds in favor of the Applicant it is required to order a new trial or the immediate release of the Applicant.

GROUND FOR REVIEW NO. 2

APPLICANT CONTENDS THAT THE TRIAL COUR ERRED IN NOT GIVING A CORRECT CHARGE TO THE JURY WHEN IT FAILLED TO STATE WHETHER ACCOMPLICE WITNESS WAS A WITNESS AS A MATTER OF FACT OR AS A MATTER OF LAW.

ARGUMENT AND AUTHORITES:

A. FACTS

On page 6 and 7 of the Court's charge to the jury it states: "You are charged that Sonya Holder was an accomplice if any offense was committed, and you are instructed that you cannot find the defendant guilty upon the testimony of Sonya Holder unless you first believe that the testimony of said Sonya Holder is tue and that it shows the defendant is guilty as charged in the indictment.

B. APPLICABLE LAW

The Court of Criminal Appeals has established a standard of review to whether or not the Applicant was harmed by the trial Court's error in failing to include the correct instructions in the jury charge that requires that the reviewing court to examine the evidence presented at trial. Almanza v. State, 686 S.W.2d 157, 174 (Tex.Crim.App.1985)("We that finding error in the Court's charge to the jury begins-not-ends the inquiry; the next step is to make an evidentiary review along the lines described in Davis, supra as well as a review of any other part of the record as a whole which may illuminate the actual not just the theoretical, harm to the accused.").

At the conclusion of final arguments of counsel the Court prepared the

13

proposed charge to the jury and presented it to the State and the Applicant's counsel to permit each an opportunity to enter objections to the proposed charge and neither the State or the Defense objected to the charge. The Court's failure to include the correct instruction on accomplice witness as a fact question for the jury to decide if the witness, Sonya Holder, was a accomplice as a matter of fact, or as a matter of law. See McDuff v. State, 939 S.W.2d 607, 613 (Tex.Crim.App.1977). The individuals, Sonya Holder, Robert L. Brown, having been indicted for committing the offense, were accomplices as a matter of law. Smith v. State, 897 S.W.2d 348, 350 (Tex.Crim.App.1995).

The only evidence that would have been available to the State to support a conviction of the Applicant would have been the testimonial evidence of the witness who was a party (accomplice) in the offense. Of course, under Texas Law, a conviction cannot be sustained on the uncorroborated testimony of individuals who were accomplices in the commission of the offense.

Pursuant to T.P.C. §7.01. Parties to Offense (a) each party is responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. (b) Each party to an offense may be charged with the commission of the offense. (c) All traditional distinctions between accomplices and principles are then abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principle or accomplice, and T.P.C. §7.02. Criminal Responsibility for Conduct of Another provides: a person is criminally responsible for an offense committed by the conduct of another...(2)acting with the intent to promote or asist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;...In addition, Tex.Crim.Proc. Art. 38.14. Testimony of Accomplice, informs us that, " conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and corroboration is not sufficient if it merely shows that the commission of the offense." Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Crim.App.2002).

Sonya Holder, applicant's codefendant, testified that she had had a relationship with the victim for approximately five years wherein he would give her money and drugs for sex. (RR4: 32-41). She also testified that she also had a relationship with Applicant at the same time wherein they would have sex and do drugs together. (RR4: 42-45). She testified that on September

14

29, 1999, she went to Pete Arevalo's house to rob him and in that robbery she took drugs from Arevalo's home. She testified that she took the drugs to Brown and they smoked them. (RR4: 45-46). Holder related that they drove to to the victim's home which was located in his automotive shop. She knocked on the front door and when the victim answered the door, she told him that she needed to use the bathroom. The others were waiting off to the side. Holder testified that she entered the victim's small apartment and proceed to the bathroom. Holder testified that when she returned from the bathroom she saw the applicant holding the victim, by his neck up against the wall and Quincy was holding the gun to the victim's head. (RR4: 52-54). Surely she satisfied the legal requirement as set out in §7.02 in that arguably she had the requisite intent, knowing that they were going to rob the victim and she certainly did aid in the preperation having helped in the securing of the victim by knocking on the door.

As a consequence Holder satsfied both the legal and factual conditions of §7.01 and §7.02. With these facts, concerning the knowledge and the conduct of the witness, it is not unreasonable to expect that, had the required correct instructions regarding accomplices been included in the charge, the jury could have determined that Holder was a accomplice as a matter of law.

A person is an accomplice if she participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the applicant or for a lesser-included offense. Medina v. State, 7 S.W.3d 663, 641 (Tex.Crim.App.1999) cert. denied 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). The trial court failed in its duty to include the correct instructions were Holder was a accomplice as a matter of law. It is enshrined in our law that the jury is the sole trier of facts, not the court. Tex.C.Crim.Proc. Art. 36.13 Jury Judge of Facts, provides, "unless otherwise provided in this code, the jury is the exclusive judge of the facts, but they're bound to recieve the law from the court and be governed thereby."

In failure to include the correct instructions on a fact question in regards to accomplices and accomplice testimony the trial court has then impermissibly intruded into the are of fact determination reserved to the jury and usurped its function as exclusive trier of fact. Applicant asserts that the evidence is insufficient to support when measured by the evidentiary standard established by the Court of Criminal Appeals in Malik v. State,

953 S.W.2d 234, 239 (Tex.Crim.App.1997) where the court overruled prior case law governing sufficiency of evidence to support a conviction and stated the new rule as follows: "Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetical correct jury charge in the case. Such charge would be one that accurately sets out the law, and is authorized by the indictment, does not necessarily increase the State's burden of proof or unnecessarily restricts the State's theories of liability, and adequately describes the particular offense for which the applicant was tried."

However, should this reviewing Court determine that the trial court erred in failing to include an accomplice as a matter of law instruction concerning Holder this Court must conduct a harm analysis. The actual degree of harm is assessed from the following factors:

(1) the charge itself;

(2) the state of the evidence including contested issues and the weight of the probative evidence;

(3) arguments of counsel;

(4) any other relevant information revealed by the record of the trial as a whole.

Hutch v. State, 922 S.W.2d 166, 170 (Tex.Crim.App.1996).

The Court having denied the jury the opportunity to discharge their function as the exclusive trier of fact has denied the applicant a fair and impartial trial. The only remedy which would redress the harm to the appplicant is to reverse and remand the cause to the trial court for a new trial on the merits.


## GROUND FOR REVIEW NO. 3

THE APPLICANT CONTENDS THAT THE EVIDENCE PRESENTED WAS MANUFACTURED AND WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE CONVICTION IN ACCORDANCE WITH THE JACKSON V. VIRGINIA STANDARD.

ARGUMENT AND AUTHORITES:

a. FACTS

According to the charge and the testimony the court determined that the crime happened on September 30, 1999 into October 1st 1999. And where Sonya Holder was accompanied by three black males and went to Pete Arevalo's home to rob him of money and drugs. (RR4: 45). He was allegedly beaten with a Western Style .22 Revolver with a pearl handle. (RR4: 54, 199, 133). The gun

16

was supposedly disintergrated when it was used to beat the victim on his head, and three days later Arevalo brought the pieces to the Detective in charge of the investigation Roy Gay. (RR4: 13C). The fragments consisted of the broken pearl handle, A slide spring from an automatic weapon, a barrel that had a ten degree bend in it, a, cylinder locking pin, and other small pieces. See State's exhibit #22, (Applicant's Exhibit A).

Pete Arevalo testified that he found pieces of the gun in his bed and on the floor and under his bed. (RR4 140, 229, 230, 231, 142). This was after the Criminal Scene Investigators came in and took pictures of the small apartment and the bedroom in which this altercation took place. The Accomplice witness Sonya Holder testified that Sean handled the pistol when he exited the apartment. She also testified that the gun belonged to Quincy. (RR4: 54, 61). She later testified that they took the guns to someone elses home and tried to figure what to do with the .22 and the shotgun. (RR4: 63). She also testfied that there was only one pistol. (RR4: 71).

Since Sonya Holder testified that the pistol that was taken in the home of Arevalo and taken out of the home of Arevalo, where did the pieces of the different pistols come from. Both the victim and the detective testified that Pete Arevalo has a son who worked as a detective in the Austin Police Department. (RR4: 163, 228).

B. APPLICABLE LAW

The Applicant may assert that the evidence is legally insufficient under two seperate thoeries. See Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim.App.2002). First, he may claim that the evidence is not legally sufficient as a matter of federal constitutional law. The standard for reviewing the legal sufficiency of the evidence under this standard is whether after viewing all the evidence in the light most favorable to the prosecution any rational trier of fact would have found the "substantial elements of the criminal offense as defined by state law" beyond a reasonable doubt. Jackson v. Virginia, 99 S.Ct. 2781, 2789, n.12 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex,Crim. App.2000); Hampton v. State, 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

A review for legal sufficiency does not involve a reweighing of the evidence or a substitution of the jury's judgment. King v. State, 29 S.W.3d 556 (Tex.Crim.App.2000). The jury is to be the exclusive judge of witnesses credibility and the determiner of the weight to be accorded to the witnesses testimony, and is to reconcile conflicts in the evidence, whether *properly*

17

admitted or not in determining whether the evidence was legally sufficient. Lockhart v. Nelson, 488 U.S. 33 (1988); Johnson v. State, 967 S.W.2d 410 (Tex.Crim.App.1988). In any criminal cases the State must prove every element of the element of the offense beyond a reasonable doubt. Tex.P.Code §2.01; Tex.C.Crim.Proc., Art. 38.03; In Re Winship, 397 U.S. 358 (1970); Alvarado v. State, 912 S.W.2d 199 (Tex.Crim.App.1995). A conviction is not sustainable on appeal if the evidence does not sufficiently establish all material evidence of the offense charged. Gilbertson v. State, 563 S.W.2d 606 (Tex.Crim.App. 1978). If the evidence is insufficient under constitutional due process, the conviction must be reversed and the applicant acquitted. See Burks v. U.S., 1, 12, 98 S.Ct. 2141, 2150, 51 L.Ed.2d 1 (1978); Fuller, Supra at 253.

In the alternative, the applicant may assert that the evidence is legally insufficient under the State law sufficiency standard. Fuller, supra at 253. Under the State standard, evidentiary sufficiency is measured against the "elements of the offense as defined by the hypothetically correct jury charge for the case." Gollihar v. State, 46 S.W.3d 243, 255-56 (Tex.Crim.App.2001). A "hypothetical correct jury charge" encompasses the statutory elements of the offense as modified by the charging instrument. See Curry v. State, 30 S.W.3d 394, 404 (Tex.Crim.App.2000). If the evidence is determined to be insufficient under this State law standard the applicant's conviction must be reversed and the cause remanded for a new trial. Fuller, supra at 253; Gollihar, supra at 248.

Under both standards, a reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Dewberry v. State, 4 S.W.3d 735, 749 (Tex.Crim.App.2000); Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim. App.1988). It is not the reviewing court's duty to disregard, realign, or weigh evidence, this the fact finder has already done. Moreno, supra at 867. Rather, the verdict must stand "unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence," with such evidence "being viewed under the Jackson light." Muniz v. State, 851 S.W.2d 238 246 (Tex.Crim.App.1993)("we do not reevaluate the weight and the evidence credibility, but act as only to ensure that the jury reached a rational and clear decision.").

The fact finder, as the exclusive judge of the facts, the witnesses credibility, and the weight given their testimony, is free to believe or disbelieve the testimony or reject any or all the evidence on either side.

18

Adelman v. State, 828 S.W.2d 412, 418 (Tex.Crim.App.1992). The fact-finder do not need to believe even uncontroverted testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Crim.App.1978). Conflicts in the evidence, then, are for the for the jury to decide and resolve, and a mere conflict in the evidence, without more, is not enough to render the evidence insufficient to support a verdict. Upton v. State, 853 S.W.2d 548, 552 (Tex.Crim.App.1993).

Practically, the corrsct standard of review requires the reviewing court to resolve inconsistencies in the testimony in favor of the verdict. See Turro v. State, 867 S.W.2d 43, 47-48 (Tex.Crim.App.1993). The Court's to review the evidence "as it is already weighed by the jury's verdict to determine whether any rational trier-of-fact could have found the essential elements of the offense beyond a reasonable doubt." Moreno, supra at 867; Turro, supra at 47. In testing the sufficiency of the evidence, "a reviewing court must not focus on what the State's evidence failed to show, instead [its] focus is on the evidence actually introduced." Billey v. State, 895 S.W.2d 417, 419 (Tex.App.-Amarillo 1995).

The applicant would like to show the court as follows:

A person committs the offense of aggravated robbery, if he commits the offense of robbery as hereinafter defined, and he uses or exhibits a deadly weapon. A person ciommits the offense of robbery if in the course of committing theft as hereinafter defined and with the intent to obtain or maintain the control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. T.P.C. §29.03(a) (1)(2)(3).

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Robert Lee Brown, on or about the 1st day of October, 1999, in the county of Travis and the State of Texas, did then and there, while in the course of committing theft of property, intentionally, or knowwingly threaten or place Pete Arevalo in fear of imminent bodily injury or death, and Robert Lee Brown did then and there use or exhibit a deadly weapon, to-wit: a firearm, that in the manner or means of its use or intended use, was capable of causing death or serious bodily injury, you will find the defendant guilty of the offense of aggravated robbery and so say you by your verdict, but if you do not believe, or if you have a reason to doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty".

The quoted paragraph is sufficient to charge the offense and must be

proved. _Wray v. State_, 711 S.W.2d 631 (Tex.Crim.App.1986). In the instant case, the State relied only on the victim and the accomplice witness to convict him of the charges on the indictment. The indictemnt states that the Penal Code they used was 29.03, 2(a) stating that the victim was 65 years of age or older during the commission of the offense.

Detective Gay testified that he interviewed the victim several days after the offense. During this conversation, the victim related how Sonya Holder and three black males had come to his home and robbed him. (RR4: 131-134) The victim brought in pieces of a handgun 3 days after the occurrence which the robbers allegedly had used to beat him with and which had broken during the assault. Gay testified that after that this weapon, State's exhibit #22, was a deadly weapon. (RR4: 138-144).

Sonya Holder (accomplice witness) testified that she went to the home of Pete Arevalo on the 29th of September. She also testified that the gun belonged to Quincy and he had the gun going in to Arevalo's home and Sean had the gun coming out of Arevalo's home. She testified that there was only one pistol. She later testified that they took both guns, the .22 and the shotgun to some other home and stashed them. (RR4: 45-90).

Pete Arevalo stated in his testimony that he found the gun and brought to Detective Gay 3 days after the incident and that it was in pieces and he could only describe the pearl handle. He also testified that the shotgun misfired on him twice and it misfired on the Applicant once and also that the .22 misfired and jammed. (RR4: 193-208). the applicant avers that a pistol of the revolver type does not jam, it only misfires when it has dead ammunition in it's chamber.

Applicant contends that the manufactured evidence that Pete Arevalo did present to the Detective was legally insufficient to support the conviction and this court is required to hold and evidentiary hearing and investigate the gun evidence and compare it with the testimony given above and reverse this illegal conviction and vacate the sentece.

## GROUND FOR REVIEW NO. 4

THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO OBTAIN A CONVICTION BASED ON PERJURED AND FALSE TESTIMONY AND A FAILURE TO CORRECT THE PERJURED AND FALSE TESTIMONY AFTER IT WAS GIVEN VIOLATED THE APPLICANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO CONSTITUTIONAL DUUE PROCESS OF LAW.

AUTHORTIES AND ARGUMENT:

The United States Supreme Court has expressly recognized that when

confronted with perjurious and false testimony the prosecutor has duty to correct it. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Further, if the prosecutor had actual knowledge of the falsity of the testimony is then irrelevant, if the prosecutor should have known is sufficient enough. Giglio, supra at 152. Thus, the Supreme Court has endorsed the imputation of knowledge at least from one prosecutor to another, however, the extent of this imputation of knowledge has been expanded. In Adams v. State, 768 S.W.2d 281, 291 (Tex.Crim.App.1989), the Court noted that for purposes of imputing knowledge to the prosecution, court's have "declined to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel. See Duggan v. State, 778 S.W.2d 465, 568 (Tex.Crim.App. 1989)("it does not matter whether the prosecutor actually knows that the evidence is false; it is enough that he or she should have recognized the misleading nature of the evidence").

To summarize, the State violates a applicants rights to due process when it actively or passively uses perjured and flase testimony to obtain a conviction. Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed.2d 791 (1935); Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

Such violation occurs whenever the prosecutor has actual knowledge or imputed knowledge of the perjury. In the instant cae, the applicant urges that this reviewing court adopt the findings after review of the record that he be granted relief based upon this claim that the State used perjured testimony.

The Court will find that the State's witnesses used perjured and false testimony which violates his due process rights and the applicant would like to show the Court that the deception is apparent and would like to show the court through the following exerpts from the record.

Sonya Holder:

Q: Now I want to direct your attention back to September 29th, 1999. Did you go to Mr. Arevalo's house that day?

A: Yes, sir.

Q: And why did you go over there?

A: So we could rob him.

Q: Did you go over there that day to rob him?

A: Yes, sir.

Q: Was he there?

A: No, sir.

Q: Did you go back to his house that day?

A: Yes, sir.

Q: Did you take anything from the apartment?

A: Yes, sir, I did.

Q: And what did you take?

A: Drugs.

Q: And then on the next day, on September 30th, were you with Robert?

A: Yes, sir.

Q: Before the robbery, during the day, on September 30th, who were you all with...

A: Robert Sean and Quincy.

Q: Were you all talking about doing something?

A: Yes, they were talking about robbing him...

A: Yes, they would ask me did I know where he kept his money and drugs.

(RR4: 45-48).

Q: And when you walked out of the bathroom, what did you see?

A: I saw Robert have Mr. Arevalo by his neck against the well and Quincy had the gun in his head.

Q: Did anyone have a pistol?

A: Yes.

Q: Who had the pistol?

A: I believe Sean had it.

Q: Did Robert tell you that he tried to kill him?

A: Yes, sir.

Q: And what did he say about that?

A: He said he tried to shoot the .22 (revolver) but it jammed, and that he tried to shoot the shotgun but it got jammed. We went to somebody's house and wiped blood and they were putting away the guns. He wiped blood from his shoes and he--they were trying to figure out what to do with the .22 and the shotgun.

Q: Was there more than one pistol?

A: No, sir.

Q: Okay. So you didn't see it after the robbery?

22

A: No, sir, I didn't know what kind of condition (the pistol) was in.

Q: Describe the pistol for the jury please.

A: It was silver. That's all I know.

Q: Silver handle, silver--

A: It was a black handle with silver.

Q: Black over silver?

A: Uh-huh.

(RR4: 60-63, 77-78).

Detective Roy Gay:

A: October 4, 1999, he brought in __fragments__ of the handgun, it was left behind at the scene. He said that it was the handgun they tried to sell him.

A: I believe he said he found it in his bed or in the covers of his bed.

A: Well, it had blood on it, you know, presumably from Mr. Arevalo. It was broken in several pieces where the handle of the gun broke off.

A: Sort of a Western Style __Revolver__, pretty cheap.

(RR4: 138-143).

Pete Arevalo:

Q: How hard was he hitting you with the pistol?

A: Well, at that time they were just hitting me. They really hit me when I was in bed, when I ran into the bedroom and get my shotgun.

A: It surprised them that I had a shotgun right next to the lamp. I had it covered with a towel. At that time Sonya walked passed the doorway and I asked Sonya to help me.

A: It means it misfired, because the shotgun misfired on me--misfired on me twice while I was held down.

Q: And then each time after you fired it while they were stuggling--while you were struggling with them, did you do anything to try to clear the jam?

A: I reloaded--I cocked it again and reloaded it you know, twice, still wondering why it misfired.

(RR4: 199, 201, 206-207).

Q: Did you pay her in cash or did you pay her in crack cocaine?

A: No, I would always pay her in cash or take her to buy some.

Q: You would take her someplace to buy some crack cocaine?

A: Yes.

Q: __You never gave her directly yourself crack cocaine?__

A: __NO.__

(RR4: 227).

23

Q: And then you found pieces of the pistol that was used to beat you ove the head?

A: Yes.

Q: And where did you find that sir?

A: In my bedroom.

Q: And could you describe what pieces you found?

A: A bunch of broken pieces is all I can say.

Q: Part of the handle?

A: Yes.

Q: Do you recall what it looked like, the handle?

A: It was a pearl-pearl handle.

Q: And it was one of those cheap Saturday Night Special pistols, you think, that was used to beat you over the head?

A: It had to be.

Q: I want to show what has been marked as State's Exhibit #22, can you look in that bag and tell me what's in the bag?

A: This is the part that I found in my bedroom.

Q: And where in the bedroom did you find those?

A: I found some on the bed, some on the floor, and under the bed.

(RR4: 229-231).

Officer Surei Zamont-Knightner:

A: From there we requested a Crime Scene Unit to come out, and we allowed very few individuals to enter into the building. We started a Crime Scene Log.

A: ...It definitely looked like there had been some sort of struggle or a fight. Things were very disarrayed. Things were all over the place, and there was blood—there was blood on the floor, blood on the bed and the pillows.

(RR4: 99-100).

The applicant contends that the testimony listed above shows the State blatantly used perjured testimony and false evidence during the trial process. It was evident that the prosecutor wanted a conviction of the applicant when he went clearly outside of jurisprudence to secure this conviction that he himself brought out in testimony.

Fittingly, the prosecutor had Sonya Holder testify that she helped rob the victim on the 29th and the 30th of September. She testified that one pistol went in the home and one pistol came out of the home. She testified that she recieved drugs and money from the victim.

24

Detective Gay said that the victim brought him pieces of a handgun three days after the incident in which the Crime Scene Investigator just walked over when they processed the crime scene.

Pete Arevalo testified that he did not give her drugs and he did not keep them in his apartment. He also testified that the gun pieces he found were on the bed, on the floor and under the bed. Sonya Holder testified that the gun had a black handle, when Arevalo testified that it was a pearl handle.

In Texas, a person who swears falsely to facts in a affidavit or recording or an affiramtion on belief can be indicted for perjury. Griffin v. State, 128 S.W.2d 1197 (1939). The victim and the accomplice is analogous to facts in which were stated in their statements made on a affiramtion on belief. A person who willingly swears falsely to a belief in existence of a fact which she knows does not exist is guilty of perjury as if she had sworn directly to the existence of a fact which she knows did not exist. Brasher v. State, 715 S.W.2d 827, 831 (Tex.App.-Houston[14th Dist.] 1986).

The applicant had three witnesses who testified to his alibi and further shown the court of the perjury that was invloved in prosecuting the applicant and the trial court never considered the following testimony along with the jury.

Margaret Walker, the applicant's girlfriend at the time testified on direct examination that on September 30, 1999, applicant worked all night on her car installing a new engine. The new engine was delivered at around 9:00 p.m. on September 30th and applicant was still working on it when she went to work the next morning at 4:00 a.m. (RR5: 6-19). On redirect examination, she amended her testimony and said that the engine had actually been delivered on the evening of September 29th and applicant had worked on it on the 29th, 30th and on October the 1st. (RR5: 25-28).

Steve Michaelenko, applicant's neighbor, galso testified that around September 29th or September 30th, 1999, applicant was installing a new engine in his girlfriends car. He related that the engine was delivered at around 9:00 p.m. on the 29th or 30th and applicant worked on the car all night long. (RR5: 28-34), Michaelenko testified on redirect examination that applicant did work on the car for four or five nights in a row. (RR5: 37-38).

Stefan Michaelenko, Steve's son, also testified that he remembered applicant working onnis girlfriend's car all night long one night towards the end of September 1999. (RR5: 43-49).

25

The State's knowing use of perjured testimony and false manufactured evidence in a criminal prosecution violates due process when the perjury could decieve the jury unjustly convicting the applicant. The State also has a duty to inform the Court of it's knowledge of false evidence and perjured testimony at trial. Failure of prosecutor to correct the perjured testimony and false manufactured evidence of witnesses is ground for reversal. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173 (1959); U.S. v. Thomas, 987 F.2d 1298 (7th Cir. 1993); Demarco v. U.S., 928 F.2d 1074 (11th Cir. 1991).

In the federal system, a constitutional error is harmful on collateral review only if it had a "substantial and injurious effect or influence in the determination of the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the State bears the burden of proving this error to be harmless. O'Neal v. McAnnich, 513 U.S. 437, 15 S.Ct. 992, 130 L.Ed.2d 947 (1995).

The applicant asserts that from the totality of the record that the perjured testimony and manufactured false evidence harmed him and that the minds of the jury were persuaded by this evidence that the applicant was guilty. This reviewing court should determine, as a matter of law, whether the false statements and evidence can have a affect on the course of the proceedings. Materiality is distinguished from other elements of the crime the State typically must prove in a criminal trial. The question of the materiality of the evidence does not depend on the probative value of the evidence but it's prejudicial effect and impact. It has also been held that a factual evidentiary showing establishes the basis for the materiality of a statement, but the 'ultimate finding of materiality on any interpretation of substantive law.'

'[M]ateriality' refers to 'misstatements having some substantial potential for obstructing justice.' This includes 'ulter trivial fabrications.' State v. Rosenbaum, 910 S.W.2d 934, 937 (Tex.Crim.App.1994); Mitchell v. State, 608 S.W. 2d 226, 228 (Tex.Crim.App.1980).

The deliberate presentation of false evidence violates a applicants right to due process. The failure to correct false evidence also encompasses the same concerns. To obtain relief, the applicant has established that the evidence was material and there is a reasonable likelihood that the false evidence and perjured testimony did have an affect on the jury's verdict. Generally, that the showing is made by establishing a reasonable likelihood the

26

false evidence was considered. As such, proof of the claim has encompassed the Brecht standard of harm, and no such proof of prejudice is necessary. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555 (1995).

This reviewing Court apparently can make an exception in the use of "knowingly and intentionally use of perjured testimony and false evidence" without holding that "when such is shown the Rule 44.2(a) harmless error standard applies. See Tex.R.Evid. Rule 44.2(a).

The applicant contends that a evidentiary hearing on the evidence of the allegation on this claim of perjured testimony and false manufactured evidence shows that he is entitled to a new trial. "[A] new trial should be granted when:

(1) the court is reasonably well satisfied that the testimony given by a material witness is false;

(2) that without it the jury might have reached a different conclusion; and,

(3) that the party seeking the new trial was taken by surprise whether false testimony was given and was unable to meet, or know of its falsity, until after trial.

Larrison v. U.S., 24 F.2d 82 (7th Cir, 1928); U.S. v. Nixon, 881 F.2d 1035 (5th Cir. 1989).

Before the applicant is entitled to a new trial under the Larrison standard there is also the 'plain error standard' which asserts that the applicant must further establish that he 'probably would have been acquitted' but for trial error, and hopefully with the testimony noted above and the totality of the trial record the applcaint can recieve a reversal and remand for a new trial and ask for the perjured testimony to be corrected.

## GROUND FOR REVIEW NO. 5

THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO USE LEADING QUESTIONS DURING THE COMPLETE TRIAL PROCESS IN WHICH HELPED TO OBTAIN THE CONVICTION.

ARGUMENT AND AUTHORITIES:

A. FACTS

The State used leading questions in a especially egregrious manner that was permitted throughout the direct examinations of their witnesses until the defense counsel was then forced to object.

27

Q: And then on the next day. on September 30th, were you with Robert?

(RR4: 41).

Q: Before the robbery, during the day, on Spetember 30th, who all were you with?

(RR4: 47).

Q: And what was your intention—

A: Mine?

Q: at Mr. Arevalo's? As a group, what was you all's intention?

A: To rob him.

(RR4: 52).

Q: So he was hitting you pretty hard out there?

A: Oh, yes.

Q: Could you hear anything when you were hit?

A: O, yes. I could hear the solid hit.

(RR4: 199).

Q: Do you recall how many rounds you had in the shotgun?

A: I had four rounds—four rounds in the shotgun.

Q: Was there one in the chamber?

A: Yes.

Q: Okay. Now, when you grabbed the shotgun, what happened?

A: They knocked me on the bed, both of them did.

(RR4: 202).

Q: Okay. So at that point you were laying across—when they grabbed you, they knocked you down across the bed?

A: Yes.

Do you recall—how were you holding the shotgun?

A: Laying on the side.

Q: So you had the —barrel was in your left hand?

A: Yes, was in left hand, and I was trying to point towards the fellow in doorway, in other words, in front of me.

Q: And the fellow who was in front of you was the fellow with the pistol?

A: Yes.

Q: Which hand was the individual that was holding the shotgun—which hand was he using to hold the shotgun?

A: Do what, now—

Q: Do you recall—the individual—the man with the pistol that was also holding the shotgun—

28 .

Q: --which hand was he holding the shotgun with?

A: I guess I don't remember...

Q: But he had it by the barrel?

A: Yes.

Q: So how many times did he hit you on the head?

A: About four times, maybe five time.

Q: So he hit you several times on the bed?

A: Oh, yes, while I was down on the bed..

(RR4: 203-204).

The applicant avers that at this juncture the defense attorney was forced to object to the massive amount of leading questions by the prosecutor. The prosecution went as far as pointing out who the applicant was with the victim:

Q: When you were struggling with the guys in your house, you said that you saw the person that had the pistol?

A: Yes.

Q: Do you see that person in the courtroom today?

A: Yes.

Q: Can you point him out?

A: (indicating).

Q: Can you tell me something's he is wearing?

A: Can I tell you what?

Q: Can you tell me something that he's wearing?

A: At that time he didn't have--what do you mean?

Q: Can you tell me something he's wearing today, just so we can put it on the record that you've identified that person?

A: No, I couldn't tell you what he's wearing.

Q: Describe an article of clothing. What color is his shirt today?

A: What color is what?

Q: What color is his shirt today?

A: It's white, you know.

Texas Rules of Evidence Rule 611(c) states: "That leading questions should not be used on the direct examination of a witness except as may be necessary to develop the testimony of the witness. The trial court has discretion in deciding whether to permit leading questions. The trial court finally had to admonish the State in the use of leading questions. See Hernandez v. State,

29

643 S.W.2d 397, 400 (Tex.Crim.App.1982)(en banc).

Although it is recognized that in cases dealing with children the rule against leading questions is somewhat relaxed, it should not be entirely disregarded, as was with the case at bar. Clark v. State, 952 S.W.2d 882, 886 (Tex.App.-Beaumont 1997). It cannot be disputed that the entire direct examination of the State's witnesses demonstrated impermissiable leading questions in almost every detail of the robbery allegations. Not one answer was witnesses or from their own recollection and memory without the prompt from the prosecutor.

The examples are numerous as listed above, as the entire testimony is riddled with impermissible leading questions. Although the courts may be relaxed in this area with a child witness, we are talking about a 21 year old and a 60 year old. Such slackness in the rules of evidence should not rise to such a egregrious level that it challenges the very basis of the applicant's due process right and questions whether he recieved a fair trial given such blatant violation of the rules.

Applicant's ultimate right to a fair trial and the due process right given to him by the U.S. Constitution and by the Texas Rules of Evidence were violated by allowing such a blatant violation of Rule 611(c) and the trial court erred in allowing almost the entire direct-examination of the State's witnesses to be proceeded by the prosectuions leading questions and applicant request that his case be remanded for a new trial.


GROUND FOR REVIEW NO. 6

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO PRESENT EXTRANEOUS OFFENSE TESTIMONY AND FAILED TO PRESENT SUFFICIENT EVIDENCE THAT THE JURY COULD FIND BEYOND A REASONABLE DOUBT. THAT THE APPLICANT COMMITTED THE SAID OFFENSE OF AN EXTRANEOUS BAD ACT.

ARGUMENT AND AUTHORITES:

Extraneous acts are generally inadmissible at the guilt/innocence stage of a trial. See Tex.R.Evid. 404(b)("stating that evidence of other crimes, wrongs, acts, is not admissible to prove the character of a person in order to show action in conformity therewith"). A applicant is entitled to be tried on the accusation made in the State's pleading and he should not be tried for some collateral crime or for being a criminal in general." Wilkerson v. State, 736 S.W.2d 656, 659 (Tex.Crim.App.1987); Ex Parte Varles, 45 S.W.3d 627, 630-31 (Tex.Crim.App.2001).

30

The applicant contends that the following testimony were extraneous acts that were admitted in testimony with the failure of objections by his counsel. There was no ruling or in-camera hearing to determine the validity of the bad acts that were testified to by the accomplice-witness. The charge against the applicant was Aggravated Robbery and the extraneous offense that was unadjudicated were admitted and should be viewed under an abuse of judges discretion to have them testified before the jury panel.

SONYA LEE HOLDER:

Q: Have you ever seen Robert deal drugs?

A: Not see him, but I know of him doing it?

(RR4: 43)

Q: Did you all do anything prior to going to Mr Arevalo's?

A: Yes, sir. When Mr. Arevalo was not at home, they went riding around looking for other victims.

(RR4: 48).

A: Yes, sir. They had—they had stopped—I don't know what street and where at but they stopped somewhere and Sean, robert, and Quincy got out and went to somebody's house, but nothing happened.

A: They were going to rob somebody.

(RR4: 50-51).

Q: Did Robert do anything else that night?

A: Yes, he did.

Q: What did he do?

A: He threatened me.

Q: How did he threaten you?

A: He said if I say anything, he was going to kill me.

Q: Did he do anything physically to you?

A: Yes, he did.

Q: What did he do?

A: He grabbed me by the neck.

(RR4: 65-66).

The Tex.Code.Crim.Proc.A.. Art. 37.07 §3(a), provides that the extraneous offense may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that these prior acts are attributable to the applicant.

Art. 37.07 §3(a) does provide that: "regardless of the plea and whether the

31

punishment be assessed by the judge or the jury, evidence may be offered by the State and the Defense as to any matter the Court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation or his character, an opinion regarding his character, the circumstances of the offense for which he is being tried and notwithstanding Rules 404 and 405, Tex.R.Evid., and any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by the evidence to have been committed by the defendant or for which he could be held criminally responsible and regardless whether he has previously been charged with or finally convicted of the crime or bad act").

This rule posed several problems for the Courts until the Court of Criminal Appeals decided that when the State attempts to introduce evidence of extraneous offenses, the trial court must make an initial determination that a jury could reasonably rind beyond a reasonable doubt that the applicant committed the extraneous offense before admitting such evidence. See Mitchell v. State, 931 S.W.2d 950 (Tex.Crim.App.1996). In Mitchell, the Texarkana Court of Appeals, held that interpreting Art. 37.07 §3(a), that a preliminary requirement that the State must prove beyond a reasonable doubt that applicant is criminally responsible for the unadjudicated extraneous offense to be then admitted. Mitchell, supra at 215. However, the Texas Court of Criminal Appeals reversed and remanded Mitchell, stating that the Court of Appeals interpretation of Art. 37.07 §3(a) was incorrect.

The Court of Criminal Appeals explained that the trial court is the exclusive judge on matters of law and decides the "threshold of admissibility" on the admitted unadjudicated offenses. Mitchell, supra at 954. Thus, when the State attempts to introduce evidence of extraneous offenses, the trial court must make an initial determination that a jury could reasonably find beyond a reasonable doubt that the applicant committed the extraneous offenses. Harrell v. State, 884 S.W.2d 154, 160 (Tex.Crim.App.1994). It is only after the trial judge resolves the "threshold admissibility" of the extraneous offense, the jury, as "the exclusive judge of the facts" rather than the trial court determines whether or not the State has proved the extraneous offense beyond a reasonable doubt. See Mitchell, supra at 954.

This ruling makes the trial judge therefore, exclusively responsible for determinging the "threshold admissibility" of any extraneous offense.

32

The trial court must first determine that the evidence is relevant and that the jury could reasonably find beyond a reasonable doubt that the applicant committed the extraneous offense. Harrell, supra at 953. If the State fails to adduce the sufficient evidenc, the trial court should not then admit the evidence. Stewart v. State, 927 S.W.2d 205, 208 (Tex.App.-Fort Worth 1996); U.S.C.A. VI and XIV.

It the trial court errs in making its preliminary determination that the extraneous offense was admissible, then a harm analysis must be conducted. The Reasonable Doubt Standard for consideration of extraneous offenses in the guilt/innocence phase or in the assessment of punishment is neither constitutionally required nor based on a constitutional mandate. See Fields v. State, 1 S.W.3d 687, 688 (Tex.Crim.App.1999). The court must disregard any error not of constitutional magnitude unless it has affected the substantial rights of the applicant. See Tex.R.App.Proc. Rule 44.2(a); Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App.1998); Couchman v. State, 3 S.W.3d 155, 160 (Tex.App.-El Paso 1999).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 558, 561 (Tex.App.-San Antonio 1998). The Supreme Court has construed the nearly identical federal harmless error rule as follows: "If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand...but if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that the substantial rights were not affected.

The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand. O'Neal v. McAnnich, 513 U.S. 432, 437-38 (1995); Vega v. State, 32 S.W.3d 897, 905-06 (Tex.App.-Corpus Christi 2000); Kotteakos v. U.S., 328 U.S. 759, 776 (1946).

"Grave doubt", means "in the judges mind the matter is so evenly balanced that he feels himself in virtual equipose as to the harmlessness of the error. O'Neal, supra at 435. The trial court erred in admitting testimony of the extraneous offenses against the applicant when absolutely no evidence was presented by the State that the applicant committed such acts. No rational

trier of fact could have found the applicant had committed the extraneous offenses as testified to by the accomplice witness beyond and reasonable doubt as required under Art. 37.07 §3(a). Under the "threshold admissibility" and its requirement the trial court should not have admitted the extraneous offenses. In a similar case in Stewart, the State offered evidence of an extraneous offense with three witnesses, including the victim, who all testified to extraneous offenses in the punishment phase, but did not give adequately then identify the defendant during the voir dire examination. Stewart, supra at 208.

Although this was considerably more evidence offered than in the instant case, the court held that based on the record of the voir dire examination, no rational trier-of-fact could have found the elements of the offense beyond a reasonable doubt, and had held that the trial court erred in making its preliminary determination that the extraneous offense was admissible. Id. at 208. However, in Stewart, the court held that the error harmless when the subsequent testimony of the victim and the witness before the jury did then establish that the offense could have be found by a rational trier-of-fact beyond a reasonable doubt. The victim's testimony before trial court was considerably stronger than the evidence provided in the voir dire examination Stewart, supra at 208.

Although, in the instant case, Sonya Holder's testimony cannot amount to an overwhleming amount of substantial evidence for the trial court to have made a determination that the jury could have found the elements of the extraneous offense beyond a reasonable doubt. There was absolutely no evidence proving that the applicant committed the extraneous offenses and it's admission was undeniably harmful to the applicant given the sentence imposed by the trial court. At the very least, it should leave this court with "grave doubt" as to whether one can say with fair assurance that it did not have some impact on the jury's decision on the finding of guilt of the applicant.

Given the egregrious error of admitting the extraneous offenses by the trial court, and the obvious harm to the applicant in sentencing, it is then anticipated that the respondent will try to disguise the admission of the evidence as impeachment evidence of the applicant's character under rules 404 and 405 of the Tex.R.Evid., thus, this issue must be addressed.

Applicant asserts that the trial court erred in admitting the extraneous offenses testified to at trial in violation of Rules 404(b) and 403 of the Tex.R.Evid., and it is a general rule that an accused may not be tried for

34

some collateral crime or being a criminal in general. Williams v. State, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). Evidence of extraneous offense was improperly admitted, and reversal is required, where the probative value of the evidence was minimal and the prejudicial impact was high, the required intent for the offense could be infered from the content, so the State did not need the testimonial evidence to show intent. Castillo v. State, 910 S.W.2d 124 (Tex.App.-El Paso 1995). The rule excluding evidence of extraneous offenses is based on the belief that although such evidence shows the applicant's propensity to criminal conduct, and generally its prejudicial effect overwhelms its probative value in determining whether the accused committed the crime for which he is on trial.

In the face of a proper objection, evidence of other wrongs and acts are not admissible to prove character of the person to establish that he acted in accordance with the regards of the alleged offense, even though there was no objection made during trial. Montgomery v. State, 810 S.W.2d 372, 386 (Tex.Crim. App.1991); Lazcano v. State, 836 S.W.2d 654, 657 (Tex.App.-El Paso 1992).

An extraneous offense may be admissible, however, it has relevance apart from its tendency to prove confomity therewith. Evidence which logically serves apart such purposes as "proof of motive", "opportunity," "intent," "knowledge," "preperation," "plan," "Plan," "identity," or "absence of mistake" or "accident," is relevant far beyond its tendency to prove conforming character. Montgomery, supra at 387; Lazcano, supra at 657; Hill v. State, 852 S.W.2d 769, 770 (Tex.App.-Fort Worth 1993); Kelly v. State, 828 S.W.2d 162 (Tex.App.-Waco 1992).

The law imposes upon the trial court the ultimate task of deciding the "threshold admissibility" of admitting evidence of extraneous offenses before a jury during the trial process to prevent an abuse by the State of casting before the jury every incident or extraneous offenses that may then be concievably used against the applicant in effort to thwart the jury into believing the applicant may have done crimes for which they may have no evidence to prove to this court, in attempting to place a safeqaurd on such abuse, placed a burden of this "threshold admissiblity" standard on the trial court to determine if sufficient evidence exists before such extraneous offenses could be used against the applicant. This case is classic example of such abuse, where the trial court was inept in thier duty by allowing a potentially harmful

35

detrimental extraneous offense to be submitted to the jury in its verdict, when there was no evidence presented that proved that the applicant had then committed the crimes at all. The harm was detrimental to the applicant and he request that the court sustain this error after this court holds an evidentiary hearing to determine the facts on the merit and reverse and remand for a new trial.

## GROUND FOR REVIEW NO. 7

THE APPLICANT CONTENDS THAT HIS CONVICTION IS VOID WHEN THE PROSECUTION PROMISED THE ACCOMPLICE WITNESS/CO-DEFENDANT SOMETHING OF VALUE FOR HER INCULPATORY TESTIMONY AGAINST APPLICANT IN VIOLATION OF 18 U.S.C. §201(C)(2).

ARGUMENT AND AUTHORITES:

The applicant contends that Title 18 U.S.C. §201(c)(2), prohibits giving, offering, or promising anything of value to a witness 'for or because of' her testimony. Applicant argues that the State violated this one statute by promising the State's witness and the applicant's co-defendant Sonya Holder, probation, who had conspired with the complainant in this robbery case, in return for her testimony against the applicant. Applicant was convicted for the aggravated robbery in cause no. 002368 in the 167th District Court of Travis County. The co-defendant and the victim had an unusual and questionable affair and relationship. In trial testimony and in accordance with the county jail records the victim visited and left money to the accomplice who was responsible for the robbery against the victim. This evidence is supported by the trial record that the State's witness Sonya Holder was recieving testimonial immunity in exchange for her testimony against the applicant, by recieving probation for the response to the State and the defense. (RR4: 39-40, 72, 88).

Title 18 U.S.C. §201(c)(2) could not be more clear when it provides that:

> "Whoever, directly or indirectly, gives, offers, or promises anything of value to any person for or because of their testimony under oath, or affirmation, given or to be given by such a person as a witness upon a trial hearing or other proceedings before the court, authorized by the laws of the United States to hear evidence or take testimony, shall be fined under this title or imprisoned for not more than two years or both.

This title is broadly construed to further it legislative purpose in the detering of corruption. The prosecutor made Sonya Holder a promise of probation for her testimony against the applicant and therby violated §201(c)(2). See

36

State v. Hernandez, 731 F.2d 1147, 1149 )5th Cir. 1984). The class of people who can violate 18 U.S.C. §201(c)(2) is not limited when it avers "whoever," within the elements of the statute. First, the statute requires a gift, offer or promise, either direct or indirect, to a person. Second, the gift, offer, or promise must be of 'value'. Third, the gift, offer, or promise, must be made 'for' or 'because of' the person's sworn testiony at a trial, or other proceedings before an authorized court.

The State in the case in chief promised Sonya Holder that she would recieve probation in return for her testimony against the applicant in trial. The State of mind required to violate that statute is knowledge that the thing of value is given for or because of testimony. U.S. v. Campbell, 684 F.2d 141, 150 (D.C. Cir. 1982)

The prosecutor in the instant cause was acting on behalf of the State and is within the statutory languag of "whoever" by promising Sonya Holder ten (10) years probation for her testimony. In the case at bar, the prosecutor is the representor of the State of Texas which acted in violation of 18 U.S.C. §201(c)(2), by the promise of leniency in return of her testimony against the applicant, for without her perjured testimony the State could not have a conviction obtained in the case at bar.

In Hamilton v. General Motors Corp., [citation omitted] the policy in §201(c)(2), has long been expressed and enforced at common law when the court held, "The judicial process is tainted and justice cheapened when factual testimony is purchased, whether with leniency or money because prosecutors bear a weighty responsibility to do justice and observe the law in the course of a prosecution and it is particularly appropriate to apply the structures of §201(c)(2) to their activities. The Court also held:

> "The attorney is the representative of an ordinary party to a controversy, but of a svereignty where obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense, the servant of the law, and the two fold aim of which is that the guilty shall not escape, nor the innocence suffer.

Hamilton v. G.M.C., supra.

The State made an offer to Sonya Holder due to position as an accomplice by matter of law to the instant case. The statute's "for or because of" language it does not require a Quid Pro Quo relation between the testimony and the

37

promises, though Sonya Holder admitted to being promised probation by the State. (RR4: 39-40, 72, 88), but merely requires that the promises be motivated by the testimony, even though the testimony might have been given without promises. U.S. v. Johnson, 621 F.2d 1073, 1076 (10th Cir. 1980).

In the applicant's case, however, the record indicates that the testimony and the promises are mutually induced by one another, a relation stronger than the "for or because of" requirement by section §201(c)(2). U.S. v. Sun Diamond Growers, 138 F.3d 961, 966 (D.C. Cir. 1998).

In U.S.A. v. Sonya Evette Singleton, [citations omitted], the appellant Singleton, filed a motion to suppress testimony allegedly obtained in violation of 18 U.S.C. §201(c)(2). This reviewing Court is faced with a similar situatuion where here at the case at bar, the applicant filed a motion to reveal agreements with Sonya Lee Holder with the prosecution filed April 26, 2000. The Applicant submits that the only appropriate remedy for this error is reversal of this conviction and a new trial ordered, or in the alternative, allow the applicant to bring this second application for writ of habeas corpus and conduct and evidentiary hearing to give the applicant an opportunity to prove by the proponderance of the evidence that had it not been for the perjured testimony of the State's witness Sonya Holder, and show that no jurist of reason could find the applicant guilty beyond a reasoanble doubt.

## GROUND FOR REVIEW NO. 8

THE APPLICANT CONTENDS THAT DUE TO THE DEFICIENT PERFORMANCE OF TRIAL COUNSEL HE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE WHICH CAUSED AN ACTUAL AND SUBSTANTIVE DISADVANTAGE TO THE APPLICANT IN RECIEVING A FAIR TRIAL.

ARGUMENT AND AUTHORITIES:

A. FACTS

The applicant contends that he can show this reviewing court through the following complaint that his trial counsel was not reasonable and his actions were no the function of sound trial strategy. Trial counsel in his performance was deficient in that it fell below the prevailing norms of his profession, and the deficiency prejudiced and harmed the applicant, that is, but for the deficiency there is a reasonable probability that the result of the proceedings would have been different in which caused an actual and substantive disadvantage for the applicant to recieve a fair trial.

38

Trial counsel Hon. Charles Hineman failed to investigate the facts of the case and failed to formulate a comprehensive understanding of the facts sufficient enough to present an adequate defense for his client. Trial counsel failed to investigate the crime scene, he failed to have an expert witness appointed, failed to preserve error in multiple instances, he failed to object to extraneous offenses, he failed to request instructions for the court's charge. These are the errors that the applicant contends that will help the court to determine reasonableness of the trial counsels representation.

The performance of counsel fell below the professional norms and a reasonable probability exits that the outcome may have been different had he been aware of the facts of the case. Applicant's main argument is that on review, trial counsel's representation is highly deferential and it may be presumed that counsel's actions were not within a wife range of professional asssistance. Mallet v. State, 65 S.W.3d 59, 63 (Tex.Crim.App.2001); Tong v. State, 25 S.W.3d 707, 712 (Tex.Crim.App.2000).

When the record is silent on the motivation underlying counsel's tactical decisions, the applicant usually cannot overcome the strong and overwhelming presumption that counsel's conduct was reasonable. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App.1994); Tong, supra at 714.

The court in Strickland, held that trial counsel has a professional duty to present all testimony and any other evidence to support his client's defense. Strickland v. Washington, 466 U.S. 668 (1984); U.S. Const. Amend. Six and Fourteen; Art. I §10 Tex.Const.; Tex.Code.Crim.Proc.Ann. Art. 1.05. Attorney for the defense has a responsibility to seek out and interview any witnesses and investigate any viable deenses available to his client, and a failure to do so is ineffective assistance of counsel, if that defense is not advanced. Ex Parte Ybarra, 629 S.W.2d 943, 946 (Tex.Crim.App.1982). Texas follows the standard brought forth by the federal court in Supreme Court case, Strickland v. Washington, supra, in deciding whether the applicant did recieve effective assistance of counsel. Williams v. State, 726 S.W.2d 542, 548 (Tex.Crim.App. 1986).

B. FAILURE TO CALL EXPERT WITNESS

In the instant case the victim brought fragments of a handgun in which was alleged to be the weapon the applicant used to beat him with. This took place 3 days after the incident, the detective Roy Gay did no tests on the gun

39

fragments. There was no D.N.A. testing on the allegede blood and there was no latent prints lifted to see if there could have been someone else who committed the offense. The applicant contends that there was pieces from several different weapons which brings into effect the discrepincies of the evidence. The trial counsel could have had an expert to examine State's Exhibit #22. This inturn will help to determine if that weapon did infact break apart during the assault of the victim in his home, especially when there is testimony that show that the gun went in the house and came out of the house by the assailants.

In Powell v. Alabama, 287 U.S. 45, 58, 53 S.Ct. 55, 60 L.Ed.2d 158 (1932), the Court held, "it is not enough to assume that the counsel thus percipitated into the case though there was no defense, and exercised his best judgment in the proceeding to trial without preporation. No one can say what a prompt and thorough investigation which is ongoing might disclose as to the facts."

Applicants counsel should of investigated the crime scene of the offense charged. Then also try to interview and investigate the State's witnesses, also, he should of been aware of any surprises. The failure to investigate will not be considered sound trial strategy because no strategy can begin to be a formulation of strategy until counsel has investgated facts and the witnesses. See Ex Parte Lilly, 656 S.W.2d at 493; Smith v. State, 894 S.W.2d 876, 880 (Tex.App.-Amarillo 1995), unless the applicant who is charged, has a competent counsel able to invoke procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial and when the State obtains a conviction through such a trial it is the States action that unconstitutionally deprives the applicant of his liberty. See Cuyler v. Sullivan, 466 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); U.S. Const. Amend. VI.

The applicant's trial counsel's failure to prepare a defense and call all witnesses be it character or expert of fact, prejudices the applicant especially in light of the weakness of the State's case. Applicant is charged with aggravated robbery with a deadly weapon and was denied effective assistance of counsel and as a result of counsel failing to conduct and adequate and thorough investigation and present a forensic expert to rebut testimony of the victim and the Detective.

40

The United States Supreme Court characterized these failures as on of the two "[more]" compelling sets of errors that will support the Court in concluding that the applicant's trial attorney had provided constitutionally ineffective assistance.

In the instant case, the only witnesses to the alleged evidence of aggravated robbery if the victim and the accomplice-witnesses and there is substantial circumstantive evidence that the applicant was involved with the offense. When a case hinges all-but-entirely on whom to believe, an experts interpretation of relevant physical evidence (or lack of it) is the sort of "neutrally disinterested" testimony that may help in tipping the scales and sway the fact-finder.

Because of the importance of physical evidence should be a focal point of defense counsel's pre-trial investigation and analysis of the matter, such pre-trial investigation and analysis will generally require some form of consultation of an expert.

It is difficult to imagine a aggravated robbery w a deadly weapon...where the defense would not be aided by the assistance of an expert. In summary, trial counsel's failure to consult an expert knowing there was no test done to support the evidence and testimony that the applicant did infact hold the weapon and beat the victim with it. Then by not conducting relevant research and talking to the witnesses or even request underlying studies relied on by the evidence given by the State, contributed to the trial counsel's ineffectivensess. See Holmsback v. White, 133 F.3d 1382, 1387-89 (11th Cir. 1998); Knott v. Mabry, 67 F.2d 12-13 (8th Cir. 1982)(holding, "that counsel may be found ineffective for failing to consult and expert where "there is substantial contradiction in a given area of expertise," or technical subject matters...to conduct effective cross-examination"). For this error this reviewing Court should be compelled to hold a evidentiary hearing and search the record and see that there is evidence to sustain this complaint.

C. FAILURE TO CALL EXCULPATORY WITNESSES

The accomplice witness Sonya Holder testified that she gave the names of the other two assailants who were allegedly with the applicant during the robbery to the Detective Roy Gay, but there was no charges filed on those two individuals and their names were in the file and if the trial counsel did infact read or go through the D.A's records he could of called those

41

other two co-defendants and used their testimony to exculpate the applicant. (RR4: 69).

Brown is entitled to reasonably effective assistance of counsel, thus a right established by the Sixth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, and recognized in Art. I §10 of the Texas Constitution and Art. §1.05 of the Texas Code of Criminal Procedure. State v. Thomas, 768 S.W.2d 335, 336-37 (Tex.App.-Houston [14th Dist.] 1989); Ex Parte Duffy, 607 S.W.2d 507, 513 (Tex.Crim.App.1980).

Texas follows the standard ennuciated in Strickland, in deciding whether the applicant has recieved effective assistance of counsel. Wilkerson v. State, 726 S.W.2d 542, 548 (Tex.Crim.App.1986). Under that standard the applicant must establish two things: (1) Counsel's performance was deficient; and, (2) the deficient performance prejudiced the applicant, if either of the lements is not established, the contention fails. Rico v. State, 707 S.W.2d 549, 556 (Tex.Crim.App.1983).

An attorney has a professional duty to present all testimony and other evidence to support the defense of his client. Ex Parte Ybarra, supra at 946. A criminal defense attorney has a responsibility to seek out and do an interview of potential witnesses and the failure to do do is to be considered ineffective where the result is that any viable defense available to the accused is not advanced and the decision to call a witness is generally a matter of trial strategy, but the failure to interview a witness will be considered ineffective assistance of counsel when inaction precludes the accused from advancing a viable defense.

There were these two witnesses that could testify that the accomplice witness lied to the court about the applicant's invlovement in the offense in which he was charged, and that testimony at trial would of helped to arrive at a different outcome.

This reviewing Court will hold that if trial counsel would have secured the other two individuals he could have discredied the victim's and accomplice witnesses testimony. He never spoke to them or tried to have them subpeonad during the course of the trial and never sent anyone to talk to them. This reviewing court will then characterize that the failure to call any potential witnesses as a failure to adequately prepare for trial, and not as a strategic decision. Berry v. Morton, 100 F.3d 1089, 1100-01 (3rd Cir. 1996); and see also

42

<u>Lewis v. Mazurkiewicz,</u> 915 F.2d 106, 113 (3rd Cir. 1990).

D. FAILED TO OBJECT TO EXTRANEOUS OFFENSE TESTIMONY

The applicant contends that the record is full of extraneous offense testimony as announced in <u>Ground For Review No. 6,</u> in which there was never an objection by the trial counsel and this action caused an actual and substantial disadvantage of the applicant into recieving a fair trial.

Extraneous offenses are inherently prejudicial and when counsel fails to object to numerous extraneous offense and prejudicial matters, counsel's is ineffective. See <u>Williams v. State,</u> 662 S.W.2d 344, 346 (Tex.Crim.App. 1983); <u>Cude v. State,</u> 588 S.W.2d 895 (Tex.Crim.App.1979); <u>Wenzy v. State,</u> 855 S.W.2d 52, 58 (Tex.App.- Houston[14th Dist.] 1993). Generally drug evidence has no relevance in a non-drug prosecution. See <u>Couret v. State,</u> 792 S.W.2d 106, 108 (Tex.Crim.App.1990).

Drug evidence and threats as testified to in the instant case was .. then irrelevant. The first mention of drugs was by the accomplice witnesses testimony during the presentation of the State's case in chief. And that extraneous an prejudicial testimony was in direct violation of Tex.R.Evid., 404(b) and 403. It is a general rule that an accused may not be tried for some collateral crime of being a criminal in general. Tex.R.Evid., 404(b).

Not every allegation of inefective assistance of counsel, in this case would justify a reversal. However, then, the totality of the defense counsel's representation undermines the court's confidence in the conviction. The Court of Criminal Appeals has held that counsel is ineffective when he failed to object to extraneous offense testimony. In <u>Montez v. State,</u> 824 S.W.2d 308, 310 (Tex.App-San Antonio 1992) the Court held, that applicant did not recieve a fair trial, and the totality of trial counsel's assistance undermined the court's confidence in the outcome of the trial. Many of the factors exist in the present case. Specifically, trial counsel must be aware of the impact of the extraneous offenses and their admission should not be taken lightly. Even under the strict standard in <u>Strickland,</u> the court has no choice but to find defense counsel's ineffective assistance led to the introduction of damaging extraneous evidence such that the court's confidence in the result of the trial is undermined to the extent that the Court cannot state with reasonable certainity where the applicant was found guilty of the crimes charged or the extraneous bad-acts offered by the State.

43

Evidence of extraneous offense was improperly admitted, and reversal is required, where the probative value of the evidence was minimal and the prejudical impact high, the required intent for the offense could be infered from the content, so the State did not need to show the intent and the trial counsel was infact ineffective for not objecting to the testimony that was given. Castillo v. State, 910 S.W.2d 124 (Tex.App.-El Paso 1995).

The rule excluding evidence of extraneous offense is based on the belief that although such evidence shows the applicant's propensity to criminal conduct, and generally its prejudicial effect overwhelms its probative value in determining whether the accused committed the crime for which he is on trial. In the face of a proper objection, evidence of other wrongful acts is not admissible to prove character of the person to establish that he acted accordingly regarding the alleged offense, "but in the instant case there was no objections vocalized." See Montgomery v. State, 810 S.W.2d 372, 386 (Tex. Crim.App.1991); Lazcano v. State, 836 S.W.2d 654, 657 (Tex.App.-El Paso 1992, pet. ref'd).

The applicant asserts that an extraneous offense may be admissible, however, if it has relevance apart from its tendency to prove character conformity therewith. Evidence which logically serves apart such purposes that are not objected to the jury will paint a picture in their mind that the applicant is common criminal with no future rehabilitation.

The applicant's attorney at trial was ineffective for not objecting to the improper use of extraneous evidence where the applicant had no prior convictions for the offenses ttestified to and this error was not harmless. See e.g., Vetelo v. State, 8 S.W.3d 164 (Tex.App.-Waco 2000) Webb v. State, 36 S.W.3d 165 (Tex.App.-Houston[14th Dist.] 2000). The State did not give any notice of extraneous offenses and the applicant's attorney at trial did not object and harm is shown because the extraneous offenses improperly bolstered the the testimony of the accomplice witness and the danger is too great that the jury would give upward departure on the character evidence of this type and that is because the applicant might have commited extraneous bad acts before...he should be givne a larger sentence of the instant charge. This then created a actual and substantive disadvantage against the applicant and for it not being objected .to caused the trial counsel to be ineffective.

E. FAILURE TO PRESERVE ERROR.

An exception to Strickland's presumption of strategy exist when the record clearly confirms that no reasonable trial counsel would have engaged in the complained of conduct of omission. Vasquez v. State, 830 S.W.2d 948, 951 (Tex.Crim.App.1992); Weeks v. State, 894 S.W.2d 390, 392 (Tex.App.-Dallas 1994); Chavez v. State, 6 S.W.3d 66, 71 (Tex.App.-San Antonio 1999), holding counsel ineffective in light of such a record is not speculation becuase the deficient performance is confirmed by the appellate record. Vasquez, supra at 951; Weeks, supra at 392; Stone v. State, 17 S.W.3d 348, 350 (Tex.App. -Corpus Christi 2000). In other words, Strickland does not require deference when there is no concievable strategic purpose that would explain a trial counsel's conduct. Lyons v. McCotter, 770 F.2d 529, 535 (5th Cir. 1985).

In the exception stated earlier the court holds that when there are "certain exact circumstances that are so egregriously prejudiced...ineffective assistance of counsel will be presumed." The presumed prejudice is where there has been an actual breakdown in the adversarial process at trial it then becomes highly prejudicial and very harmful to the applicant. See Toomey v. Bunnell, 898 F.2d 741, 744 (9th Cir. 19990).

The Supreme Court has held that [t]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate. Anders v. California, [citations omitted]. The right to the effective assistance of counsel is thus, the right to the accused to survive the crucible of a meaningful adversarial testing. [I]f the process loses its character as a confrontational match between adversaries, the constitutional guarantee is violated. [emphasis added].

In United States v. Cronic, [citations omitted], the Court recognized that there are "circumstances...so likely to prejudice thwe accused that the cost of litigating thier effect in a particular case is unjustified." Cronic, supra at 658. The Court identified that the complete denial of counsel or the deprivation of effective representation at a critical stage of an accused:

> "circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial the likelyhood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct at the trial.

45

Cronic, supra at 659-660.

Texas Rules of Appellate Procedure Article §33.1 provides: "that in order to then preserve a complaint for appellate review, a party must present the complaint and obtain a ruling." It is incumbent upon counsel to object at the earliest possible opportunity. Butler v. State, 769 S.W.2d 234 (Tex.Crim. App. 1989).

In order to effectively preserve error after objection is sustained, counsel must ask for an instruction to disregard and move for mistrial after the instruction is given. Nethery v. State, 692 S.W.2d 686, 701 (Tex.Crim.App. 1985).

The applicant asserts that the trial counsel failed to preserve error in the record.

| | |
|---|---|
| Objection to Hearsay<br>Sustained<br>Failed to ask for instruction<br>Failed to ask for mistrial.<br>(RR4: 55). | Objection to Hearsay<br>Sustained<br>Failed to ask for instruction<br>Failed to ask for mistrial<br>(RR4: 56). |
| Objection to Hearsay and Specualtion<br>Sustained<br>Failed to request for instruction<br>Failed to request for mistrial.<br>(RR4: 53). | Objection to leading questions<br>Sustained<br>Falied to request for instruction<br>Failed to request for mistrial.<br>(RR4: 202-204). |

The applicant avers that generally, an isolated failure to object to improper evidence in itself does not necessarily constitute ineffective assistance of counsel, but multiple instances to object and have the objection sustained and failed to get a ruling or ask for mistrial is ineffective assistance of counsel. See Bridge v. State, 726 S.W.2d 558, 571 (Tex.Crim.App. 1985).

It has been held that isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or then seperating out one portion of the trial counsel's performance for examination. Bridge, supra at 571; Johnson v. State, 629 S.W.2d 731, 736 (Tex.Crim.App. 1981).

Also, representation is not ineffective simply because, in hindsight the attorney could have or even should have done something differently. Goodin v. State, 899 S.W.2d 387, 392 (Tex.App.-Houston[14th Dist.] 1995). Allegations of ineffective assistance of counsel must be firmly founded in the record. See

46

Beheler v. State, 3 S.W.3d 182, 185-86 (Tex.App.-Fort Worth 1999). Applicant takes the position that the record is firmly founded in the record with many instances of ineffective assistance of counsel, i.e., in accordance with the above errors of cokmplaints which is so inherently prejudicial that so specific prejudice need be shown. In the instant case, it is clear that trial counsel was capable to properly preserve error, he failed in that duty as shown in the complaint above, and this created an actual and substantive disadvantage of applicant to recieving a fair trial and trial counsel should be found that he denied his client a fair trial.

F. FAILED TO REQUEST SPECIFIC INSTRUCTIONS IN THE JURY CHARGE

The applicant avers that the trial counsel failed in his duty to request or raise the issue of alibi. Applicant had three (3) witnesses who testified at trial that stated that the applicant was at his residence at the time the crime was committed, and the trial counsel did raise the issue or even request and instruction on the alibi defensive theory.

When the evidence is inconsistent and supports more than one defensive theory, the applicant is entitled to an instruction on every theory raised, even if the defenses themselves are inconsistent and contradictory. Booth v. State, 679 S.W.2d 498, 501 (Tex.Crim.App.1984); Johnson v. State, 715 S.W.2d 402, 406-07 (Tex.App.-Houston[1st Dist.] 1986).

There is nothing in Brown's records to suggest that he was not entitled to instructions on defensive theories if it was raised by the evidence. This reviewing court must consider al relevant information revealed by the record, including the entire jury charge, the States of the evidence, and the argument of counsel. VanBrackle v. State, 179 S.W.3d 708, 714 (Tex.App.-Austin 2005).

The defense of alibi arises where there is evidence that the accused is at a place where he could not have been found guilty of participating in the offense. Arney v. State, 580 S.W.2d 836, 840 (Tex.Crim.App.1979). A defendant is entitled to a defensive instruction on every issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or also uncontradicted. Villareal v. State, 821 S.W.2d 682, 685 (Tex.App.-San Antonio 1991). Even though the applicant contends that alibi is not the type of defense that entitles a defendant to an istruction. See Holliman v. State, 879 S.W.2d 85, 87 (Tex.App.-Houston[14th Dist.]1994); Green v. State, 928 S.W.2d 119, 125 (Tex.App.-San Anotnio 1996). However, applicant avers that he is entitled to a

47

defensive theory. Also, applicant may rely "on more than one defensive theory." In fact, a "applicant is entitled to submission of every defensive issue raised by the evidence. Thomas v. State, 678 S.W.2d 82, 85 (Tex.Crim.App.1984) Darty v. State, 994 S.W.2d 215, 219 (Tex.App.-San Antonio 1999).

Alibi is not a statutory defense and it is not an affirmative defense. Alibi is not a defense within the accurate meaning of the word, but is a fact shown in rebuttal of the State's evidence, therefore, it does not demand a specific instruction from the court. Furthermore, this reviewing Court will hiold that failing to secure an instruction on alibi is not necessarily ineffective assistance of counsel. Zuniga v. State, 733 S.W.2d 594, 598-99 (Tex. App-San Antonio 1987). Therefore, in this case, defense counsel's failure to request an instruction on alibi was not, by itself, ineffective assistance of counsel. However, given that applicant's defense hinged on alibi, it is difficult to understand why any competent defense counsel would fail to at least try to get an alibi instruction.

The Court of Criminal Appeals has held for many decades that "when evidence of collateral crimes are introduced for one of the various purposes, the jury should be instructed that they cannot consider against the applicant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof." Lankford v. State, 248 S.W. 389 (1923). In other words, a jury should be instructed that they are not to consider any extraneous acts evidence unless they believe beyond a reasonable doubt that the applicant committed the act. See Harrel v. State, 884 S.W.2d 154, 157 (Tex.Crim.App.1994). "If a defendant, during the guilt/innocence phase, ask for a instruction to the jury on the standard of proof required for the admittance of extraneous offenses, the defendant is entitled to that instruction." Mitchell v. State, 931 S.W.2d 950, 954 (Tex.Crim.App.1996).

Therefore, if applicant's counsel had requested the jury to be instructed that they could not consider the extraneous act evidence unless they believed beyond a reasonable doubt that the applicant committed those acts, the requested charge should have been given.

Likewise, when the State is permitted to introduce evidence of applicant's extraneous bad acts for a limiting purpose, the applicant also has the burden of requesting an instruction limiting consideration of those acts. See Abnor v. State, 808 S.W.2d 476, 478 (Tex.Crim.App.1991). Applicant has the burden

48

of requesting a limiting instruction at the time the evidence is admitted as well as requesting a limiting instruction in the charge. See Garcia v. State, 887 S.W.2d 863, 878 (Tex.Crim.App.1994).

If a applicant so request this instruction, the trial court errs in not giving the instruction. The state will argue that the extraneous acts were admissible for the limiting purpose of showing state of mind, intent, relationship, motive, and to rebut defensive theories. Therefore, if trial counsel had requested that the jury be instructed that they could consider the extraneous acts evidence only if for limiting purposes for which it was offered, the trial court would have been required to give the requested limiting instruction. See George v. State, 890 S.W.2d 73, 76 (Tex.Crim.App.1994)(holds "if the defendant so requests at the guilt/innocence phase of trial, the trial court must instruct the jury not to consider extraneous offenses evidence that was admitted for a limiting purpose unless it believes beyond a reasonable doubt that the defendant committed the extraneous offenses. Almanza v. State, 686 S.W. 2d 157, 171 (Tex.Crim.App. 1985).

G. CONCLUSION

To obtain a reversal on the basis of ineffective assistance of counsel during the complete proceedings at trial, the applicant must show:

(1) that his counsel's performance was so deficient that counsels must show that he was functioning at the level of competence guaranteed by the Sixth ... Amendment, and;

(2) there is a reasonable probability that, but for counsel's deficient performance, that the result of the trial would have been different. Strickland, supra at 695; Hicks v. State, 837 S.W.2d 686, 690-91 (Tex.App.-Houston[1st Dist.] 1992). The standard of review is quaged by the totality of of the circumstances.

The circumstances behind the complaint created and actual and substantive disadvantage to the applicant and this reviewing court will hopefully decide to hold an evidentiary hearing and with the findings of facts and conclusions of law order a reversal and vacate the sentence.


## GROUND FOR REVIEW NO. 9.

APPLICANT CONTENDS THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL FOR FAILURE TO LITIGATE ALL CLAIMS IN VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

49

ARGUMENT AND AUTHORITIES:

A. FACTS

The applicant contends that his appellate attorney Honorable Linda Icenhauer-Ramirez did not litigate all the errors that could be claimed on direct appeal as shown by the argument applied in this memorandum and application. As this reviewing court can see by the complaint herein can be raised on direct appeal unless the decision not to raise that issue arises from a legitimate source and reasonable strategy potential of some advantage to the applicant. It is clearly established on the record that the victim and the accomplice witness perjured themselves but appellate counsel failed to raise that issue. Appellate counsel failed to raise ineffective assistance of counsel claims, failed to raise defective jury charge issues, etc.

B. APPLICABLE LAW

It is well established that a applicant has a constitutional right to effective assistance of counsel on direct appeal. Evitts v. Lucey, 469 U.S. 387 (1985); Ex Parte Coy, 909 S.W.2d 927, 928 (Tex.Crim.App.1995); Teague v. Scott, 60 F. 3d 1167, 1170 (5th Cir. 1995)(the Sixth Amendment right to effective assistance of counsel applies both to trials and direct appeals). In analyzing claims of ineffective assistance of counsel on direct appeal, Texas applies the Strickland standard. See Ex Parte Jarrett, 891 S.W.2d 935, 938 (Tex.Crim.App.1994). Applicant must establish that (1) appellate counsel's performance was deficient, and (2) due to counsel's unprofessional errors, there exists a reasonable probability sufficient to undermine confidence in the outcome. Strickland, supra at 694; Butler v. State, 716 S.W.2d 48, 54 (Tex.Crim. App.1986). The ultimate question with respect to ineffective assistance on appeal is whether a applicant was afforded a meaningful appeal. Olivo v. State, 918 S.W.2d 521, 526 (Tex.Crim.App.1996); Ward v. State, 740 S.W.2d 794, 799-800 (Tex.Crim.App.1987); Epps v. State, 809 S.W.2d 770, 772-73 (Tex. App.-Houston[14th Dist.] 1991).

The law is clear that appellate counsel need not raise all claims of errors in order to be effective. See Jones v. Barnes, 463 U.S. 745, 751 (1983); Page v. United States, 884 F.2d 300, 302 (7th Cir. 1989). Nor does the law require that an appellate attorney advance every concievable argument on appeal that the trial record supports. See Stafford v. State, 758 S.W.2d 663, 674 (Tex.App.-Houston[1st Dist.] 1998)(citing Gray v. Greer, 800 F.2d 644,

50

647 (7th Cir. 1986)). Indeed, it is the process of "winnowing out" weaker claims on appeal and focusing on those more likely to prevail that is the hallmark of effective appellate advocacy. Burger v. Kemp, 483 U.S. 776, 784 (1987). As Chief Justice Burger observed in Jones:

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often to as little as 15 minutes—and when page limits on briefs are widely imposed. ...A brief that raises every colorable issue runs the "risk" of burying good arguments....in a verbal mound made up of strong and weak contentions.

> For judges to second-guess reasoanble professional judgments and impose on appointed counsel's duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous effective advocacy that underlies [the Sixth Amendment].

Jones v. Barnes, supra at 752-754.

If an issue which was not raised on direct appeal that may have resulted in a reversal of the conviction or an order for a new trial, the failure is prejudicial. Appellate counsel's ineffectiveness can constitute cause even if counsel's ineffectiveness did not violate the constitution under the requirements of the Wainwright standard. It is also requires the trial court to review the entire record for significant and obvious errors and failures.

Appellate counsel's failure to raise claims on direct appeal constitutes ineffective assistance of counsel and provides "cause" for procedural default. Clemmons v. Delo, 124 F.3d 944 (8th Cir. 1997). Appellate counsel's failure to raise legally meritorious issues on direct appeal constitutes ineffectiveness of counsel. Banks v. Reynolds, 54 F.3d 1508, 1515-16 (10th Cir. 1995). Appellate counsel's failure to raise obvious issues on the record constitutes ineffective assistance of counsel. Daniel v. Thigpen, 744 F. Supp. 1535 (M.D.Ala. 1990). Appellate counsel's failure to raise ineffective assistance of counsel claims against trial counsel on direct appeal constitutes "cause" for procedural default for trial counsel's inaction. U.S. v.Ex Rel Barnard v. Lane, 819 F.2d 798 (7th Cir. 1987); Grubbs v. Singletary, 900 F. Supp. 425 (M.D. Fla. 1995).

Applicant contends that the failure of appellate counsel did give the appellant anactual and substantive disadvantage and the court is required to hold a evidentiary hearing to determine the prejudice caused and order a reversal and vacate the sentence and order the release of applicant.

51

## GROUND FOR REVIEW NO. 10

THE APPLICANT CONTENDS THAT FACTUAL INNOCENCE IS AN EXCEPTION TO THE (ADEPA'S) ONE YEAR STATUTE OF LIMITATIONS AND/OR IS A GATEWAY FOR REVIEW OF THE APPLICANTS CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND EVIDENCE IS INSUFFICIENT TO ESTABLISH THE REQUISITE FINDING OF GUILT IN THIS CASE.

ARGUMENT AND AUTHORITIES:

'Actual Innocence' bears a heavy amount of scrutiny in the American Justice System, where officers of the Court has already developed a mindset that anyone and everyone who has been charged with an offense is guilty, no matter the circumstances, or the evidence. Their objective is to send an accused to prison, or place him on probation. They have developed an immunity to anyone who pleads "NOT GUILTY" in any case that is brought before them and God forbid that the one in thirty-one (31) of every man or woman in the United States is either in jail or prison or on a supervised release and have not been falsely accused of a crime due to a scornful and vengeful individual who wants to see a specific person to suffer by inflicting as much harm as possible.

Has the consciousness of the American people developed a moral attitude that no matter how long a person serves time in prison and paid his debt to society in accordance with the law, he should never be released? And if he is released from prison, should he bare the mark of the Scarlett Letter just because he was released? The Government's Legislative Branch and the American Judiciary has placed so many safeguards in the law and statutes of the criminal codes, that it is impossible for a person to prove his innocence and thus is forvered scarred.

The beginning consensus of law makers of jurisprudence has been that "a person is innocent until proven guilty," but, when one stands before the chosen tribunal, that original consensus becomes a facade, and is branded guilty automatically until he can prove his innocence. However, those safeguards that are placed makes it almost entirely impossible to do so. This is an intent of the Government with the enactment of the AEDPA and other rules.

The creed of the DISTRICT Attorney is to be a seeker of justice and truth, instead of having a Game Show Host zealousness to destroy an individuals life, and tearing aprt the fabric of America, the family unit, by taking a human being and placing him or her in the New Cattle Market of America titled the Judicial System. They now become a number instead of a human being and a member of society. It becomes a fundamental miscarriage of justice when a person

52

railroaded by judicial powers in place with questionable evidence, hungry prosecutors, and disinterested defense attorney's who use shady courtroom theatrics as major actors in a broadway play and the courtroom is their stage, biased and prejudical judges, vengeful and spiteful individuals, vho's only wish is to inflict harm on the premises of revenge, and a jury panel that only considers an accused's past history to determine his guilt by believing only the words of the prosecution due to the media's hype that places a plethora of blame upon the accused.

Actual innocence in this type of application is not itself a basis for federal Habeas relief; it is however, "a gateway through which a Habeas applicant must pass to have his otherwise time barred constitutional claims to be considered on the merits of the newly available or already available evidence that is presented by the applicant. A applicant may avoid this bar by demonstrating "cause for procedural default and actual prejudice as a result of an alleged violation of federal law." Coleman v. Johnson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

However, this bar may also be overcome by a showing that a "failure to consider the claims will result in a fundamental miscarriage of justice." Such a fundamental miscarriage of justice may be demostrated by a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. at 321; Murray v. Carrier, 472 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

To satisfy this standard a applicant must demonstrate that he is "actually innocent." To demonstrate "actual innocence" it is necessary that the applicant "show that it is more likely than not no jurist of reason would not have found applicant guilty beyond a reasonable doubt. Lucas v. Johnson, 132 F.3d 1069, 1076-77 (5th Cir. 1998).

It is highly prejudical when a district court fails to, or refuses to, address an applicants claim of actual innocence? The applicant avers that it is important to note that in this regard that "actual innocence" means "factual innocence," not mere legal sufficiency, even though exculpatory evidence may be weighed against inculpatory evidence. Clewis v. State, 922 S.W.2d 126, 130, 136 (Tex.Crim.App.1996); Sawyer v. Whitely, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-19, 120 L.Ed.2d 269 (1992).

In Schlup, for example, the court has then held that to sustain an

"actual innocence" claim an applicant must show that it is more than likely not no jurist of reason would have convicted him in light of the new evidence, or available evidence." That "evidence" is to be evaluated, of course, along with the "evidence" adduced and then its to consider all the evidence contained in the trial transcripts. The Habeas Court will make it's determination that concerns the applicant's innocence in light of all the evidence, including that which has become available since trial. See Bousley v. U.S., 118 S.Ct. 1604, 1611, 1614, 1615, (1998).

But this kind of evidentiary review is quite different from that in which the evidence is examined to determine whether, viewing it in the light most favorable to the verdict, or any rational trier-of-fact could have found Brown guilty beyond a reasonable doubt. Indeed, one of the most significant differences between the so-called "factual" and the so-called "legal" or the so-called "constitutionally" sufficiency of the evidence standards is the latter does not permit a weighing of inculpatory or exculpatory evidence.

Because in evaluating a Habeas claim that newly discovered or available evidence proves that the applicant to be innocent of the crime for which he was convicted, the courts tasks is to assess the probable impact of the newly discovered or available evidence upon the persuasiveness of the State's case as a whole, the Court must necessarily weigh such exculpatory evidence against the evidence adduced at trial. The Jackson v. Virginia, standard of evidence sufficiency is simply not appropriate to this purpose. Of course, any person who has been finally convicted in an alleged fair trial would not be permitted to wage, a collateral attack on that conviction without making an exceedingly persuasive case that he is actually innocent which is one of those spoken of earlier safeguards.

It is thus entirely reasonable to insist, and the courts should continue to insist, that a applicant for Habeas relief based upon a claim of "actual innocence" must demonstrate that the newly discovered or available evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine the confidence in the verdict and that it is probable that the verdict would be different [on retrial].

Applicant must show that "a constitutional violation has probably resulted in the conviction of one who is "actually innocent." In contrast, under the Carrier standard the newly discovered or available evidence may indeed

54

call into question the credibility of the witnesses presented at trial...to sustain a claim of actual innocence should, at a minimum be able to persuade the Court that the new or available evidence raises a reasonable doubt about his guilt, because it focuses on the applicant's burden of proof, directs the Habeas court, as fact-finder, to weigh the newly discovered, exculpatory evidence or the availabe evidence against the inculpatory evidence offered at trial for the purpose of determining whether it affirmatively shows that Brown is innocent.

Rather, the court charged with deciding such a claim shall make a case-by-case determination about the reliability of the newly discovered or available evidence under the circumstances. The Court then should weigh the evidence in the favor of the applicant against the evidence of his guilt. Obviously, the stronger the evidence of the applicant's guilt the more strength of the persuasiveness of the newly discovered or available evidence must be.

Accordingly, the Court should hold that, in the exercise of the Court's post-conviction Habeas jurisdiction under Art. 11.07 of T.C.C.P, the Court's job is not to review the jury's verdict but to decide whether the newly discovered or available evidence would have convinced the jury of the accused innocence.

The applicant avers that to establish the above two-sided argument, the applicant will present his counter argument, under three points:

    (A) Applicant's due diligence to locate and establish evidence of his innocence,

    (B) The credibility of applicant's factual innocence.

    (C) Actual innocence is an exception to the A.E.D.P.A.'s statute of limitations which includes the following two prongs;

        (a) Constitutionally, and discussed from, one proceeds the Suspention Clause of the U.S. Constitution,

        (b) Equitable tolling is merited.

Unfortunately, this Court cannot assume that a factual innocence gateway is simply available to the applicant unless he has been reasonably diligent and his factual innocence meets the threshold requirement. Both of these considerations of the law that provides an innocence exception and gateway and in support the applicant will show the court as follows:

To support applicant's claim, he has attached a graphic exhibit titled Chron logical Timeline of Filings. This exhibit does demonstrate applicant's diligence in pursuing his factual evidence that supports his claim of his

innocence, via his numerous filings in an attempt to be timely, and to preserve, as well as pursue his claims.

Applicant has not "sit on this case." At every possible timely opportunity he has been diligent in attempting to have the Court's to see this evidence by filing writs in the State Court, Federal Court, and the Supreme Court, filed for D.N.A. testing and purchasing his records that explained the many errors that along with the evidence that proves his innocence in which his trial attorney failed in his duty to pursue in trial. See Chronological Exhibit. There was also the State's delay in not filing his original application in January 2002, in which also caused a time bar issue. Due diligence is defined by Black's Dictionary as a fair degree of diligence expected from someone of ordinary prudence as well as, a continual effort to accomplish something. Accord to Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999); Coleman v. Johnson, supra at 401.

The applicant avers that his direct appeal was filed on January 29, 2001 and affirmed on July 26, 2001. He then filed a Motion for Extension of time to file a Petition For Discretionary Review was filed on August 17, 2001, this was granted until October 26, 2001, the case was issued a mandate on November 9, 2001. Brown mailed his Application for Writ of Habeas Corpus in accordance with Article 11.07 of T.C.C.P. from his unit on January 27, 2002 in which was not filed by the Court Clerk until June 4, 2002. There was 129 days that the writ was in limbo. See Exhibit B, C. The Texas Supreme Court has repeatedly held that a litigant should not be prejudiced by the Clerk's errors. See e.g., Coastal Banc SSB v. Helle, 988 S.W.2d 214, 215-16 (Tex.1999); Williams v. T.D. C.J., 142 S.W.3d 308, 309 (Tex.2004).

The applicant avers that when the date of the P.D.R. was due was when his one year limitations period began and would not be up until November 16, 2002. See Exhibit M. During the period of time in which he was waiting on a ruling of his 11.07 writ he wrote several letters at different time intervals to request the status of his 11.07 writ. See Exhibit E. Brown then filed a petition for Writ of Mandamus on June 3, 2002, which was denied along with the 11.07 Writ on September 11, 2002. See Exhibit N.

While it was once true a Writ of Habeas Corpus could not be "obstructed" Congress changed this with the enactment of the AEDPA as explained in 28 U.S.C. §2254(d)(1) does not prohibit the Courts from entertaining actions

56

after the statutory limits has passed, instead it merely sets forth relevant statute of limitations. Now therefore, the statutory language in section §2254 (d)(1) indicates that congress did not intend the limitations period to divest federal jurisdiction. Johnson v. Avery, 393 U.S. 485 (1960); Underwood v. Williams, 131 F.3d 292, 295 (5th Cir. 1998). Instead Congress chose the intent to the AEDPA limitation amendment into §2254 for the purpose of "finality of determination" and contains provisions relating to non-jurisdictional limitations." The Supreme Court has asked the lower courts to exercise care in the evaluation and dismissal of the Habeas Corpus and the dismissal denies the applicant of the Great Writ enitrely, risking injury to an impartial interest in human liberty."

The applicant avers that this is a successive application, there was no available way to present this argument since the records were not available in the past. The record clearly states the main reason for the actual innocence complaint. There was prove brought out by alibi witnesses that showed that the applicant was not at the crime scene when the offense was taken. The record so shows that the evidence was brought by a victim who testified to having sex with the accomplice-witness since she was fifteen (15) years of age and giving her drugs and money. You have a accomplice who testified to being a prostitute who recieved money and drugs in exchange for sexual favors.

The trial court refused to take judicial notice of the alibi witnesses testimony. State's Exhibit #22 was produced fraudulently by the victim and the trial court allowed the use of the evidence. The accomplice witness did so testify that the gun used in the offense went in the residence and left the residence. Plus, the District Court Clerk on purposely held the first Writ and Application for a 5 month delay to keep the applicant from filing timely to keep with the guidelines of the AEDPA.

THE CREDIBILTY OF APPLICANT'S FACTUAL INNOCENCE

In order to make a claim of factual innocence, applicant must present any reliable evidence that wwas not considered at trial and show that if it is more than likely that no jurist of reason would have found him guilty beyond a reasonable doubt." See e.g., Lucidore v. New York State Division of Parole, 209 F.3d 107, 114 (2nd Cir. 2000)(quoting Schlup v. Delo, supra at 851). In assessing the adequacy of applicant's showing, the reviewing court is not bound by the rules of admissibility that would govern at trial...but may consider the probative force of relevant evidence that was either excluded, unavailable,

or unconsidered at trial. Therefore, new evidence is not limited solely to the unavailable at trial, as long as it is evidence that the original fact-finder did not consider this approach is consistent with the innocence threshold newly established in Texas. Ex Parte Thompson, 153 S.W.3d 416 (Tex.Crim.App.2005), it is a viable and reviewable claim that should be heard on the merits. In Thompson, Justice Cochran and Holcomb, issued a concurring opinion in which they formulated a step-by-step process in determining if an innocence claim is not only credible but likewise merits a new trial.

Applicant offers this proposed formula for the court's consideration, in view of the case of Ex Parte Thompson. This process includes:

(1) the trial court hears the newly discovered evidence, it assess the credibility of the witnesses and the persuasiveness of that evidence and it makes a finding of facts concerning it's assessment of that evidence, both individual pieces and collectively,

(2) the trial court decides whether that 'new evidence' is both credible and, by clear and convincing facts that the evidence by itself then unquestionalby proves the applicant's innocence, should the trial continue,

(3) the trial court compares the 'new evidence' with the 'old evidence' from the original trial or other proceedings in doing so, the trial court might envision the situation as if the original jury trial took place all in one morning,

At that point the jury believed the States evidence, returned it's guilty verdict and heard all the punishment evidence. The jury took a lunch break afterward and that same jury returned and heard all the new evidence, evidence that the court has already found, as a matter of fact, to be credible and establishes innocence, and was asked to render a second verdict after hearing the morning and afternoon testimony. It is only if that jury acting on an intentional basis after hearing and believing both sets of evidence, would necessarilly acquit the applicant (because the 'old and new evidence' cannot be reconciled rationally), that the trial court may conclude that the applicant has unquestionably established his innocence of the crime for which he was then convicted of. Thompson, supra 417.

To summarize, the applicant compares not new or old evidence but the only relevant evidence that was adduced at trial.

Sonya Holder, a known prostitute and with a drug addiction to crack cocaine, applicant's accomplice-witness, testified that she been with the applicant on September 29, 30, 1999, she was with applicant, applicant's friend Sean and applicant's cousin Quincy and they discussed robbing the

the victim. They asked Holder if she knew where the victim kept his drugs and when she said yes, they asked her to help them. (RR4: 46-48). Holder related that they drove to the victim's home which was located in his automotive repair shop. She knocked on the front door and when the victim answered the door, she told him that she needed to use the restroom.

The others were waiting off to one side. Holder testified that she entered the victim's small apartment and proceeded to the bathroom. Holder testified that when she returned from the bathroom she saw applicant holding the victim by his neck up against the wall and Quincy was holding a gun to the victim's head. As she walked by, the victim asked her for help but she walked outside and got in the car. (RR4: 52-54).

Holder testified that at about five minutes or ten minutes later Quincy returned to the car. They were later joind by applicant and Sean who was holding the pistol. Applicant was allegedly holding a 12-guage shotgun taken from the victim. Holder also noticed that the applicant had some blood on his shoes. Applicant was allegedly have said that they had pistol-whipped the victim and they were going to kill him because he knew who Holder was. Applicant was allegedly to have said he had tried to shoot the victim with the .22 pistol which Sean had but it got jammed. Then he had tried to shoot victim with the 12-guage shotgun but it also jammed. (RR4: 55-63).

Holder testified that they drove to a friend's house where applicant wiped the blood from his shoes. They then drove to applicant's cousin's house where applicant allegedly hid the shotgun and the pistol. Later he allegedly sold the shotgun to someone in exchange for crack cocaine. When applicant allegedly returned with the crack cocaine, they smoked it. (RR4: 63-65). Holder testified that night after the robbery, applicant threatened to kill her if she told anyone about the robbery. On cross-examination, Holder testified that applicant has medium to dark skin, wears a mustache and is age "thirty-Something." (RR4: 79). (Applicant does not have a cousin named Quincy).

The victim Pete Arevalo, confessed to having sex with the 21-year old Holder for five years since she was the age of 15 or 16 years of age therefore committing aggravated sexual assault of a child. He also testified to giving her money and drugs which he confesses to drug dealing. (RR4: 211-238).

During the case-in-chief the defense brought three (3) defense witnesses who are alibi witnesses for the defense who can attest to the applicant being

59

at home during the offense in question.

Margaret Walker, the applicant's girlfriend at the time of the offnese testified on direct examination that on September 30, 1999, applicant worked on her car installing a new engine. The new engine was delivered at around 9:00 p.m. on September 29th, and applicant was still working on the car when she left for work at 4:00 a.m. the following morning October 1, 1999. (RR5: 6-28).

Steve Michaelenko, applicant's neighbor, also testifed that around September 29, or September 30, 1999, applicant was installing a new engine in his girlfriend's car. He also testified that that applicant worked four or five nights in a row. (RR5: 28-38).

Stefan Michaelenko, Steve's son, aslo testified that he remebered accused working on his girlfriends car all night long one night towards the end of September, 1999. (RR5: 43-51).

As the Supreme Court has stressed, "actual innocence" means "factual innocence" and not merely legal issues and ideas, even though this is an integeral relationship between the two. Bousley v. United States, 113 S.Ct. 1604 (1988). And, as above the applicant has demonstrated the existence of a factual link between the two. Now for the benifit of the court's closer consideration applicant will explore the facts and issues in depth.

FACTS

The applicant was charged, indicted and convicted of the offense of aggravated robbery. The State pleaded in the indictment that the applicant "threatened" to cause serious bodily injury to the complainant, while seeking to prove applciant actually "caused" serious bodily injury. The complainant described his assailant as a light-skinned black male, between the ages of 18 to 20 years of age.

The applicant is a dark-skinned black male, in his thirties, and frequents a beard and mustache. (RR4: 12-13, 79, 172). It is significant to note that the actual perpetrator of the offense was specifically and pointedly described as a light-skinned black male, between the ages of 18 to 20. (RR4: 106-108).

The victim's description of the light-skinned attacker never waivered or changed. (RR4: 170). The investigating detective in the case, Roy Gay, testifed that the victim described to hin the perpertrators as one being light-skinned and age 18 to 22 and the other being very dark skinned. (RR4: 14). Clearly, the victim distinguished between the complexion of the two

60

of his attackers. On cross examination, Dectective Gay testified the victim told him a light-skinned attacker, a young male between the age of 18 to 22, is the one who beat him with the pistol and then took the shotgun away from him and he left with it. Regarding the alleged dark-skinned male who partook in the robbery, Dectective Gay testified that the victim told him that he did <u>not</u> get a good look at the second individual and did not feel like he could identify him. (RR4: 170-172).

The victim, during his testimony, attested to being shown a photo line-up at his place of business by Detective Gay, and he specifically picked out the applicant in the tainted photo line-up, "That is the light-skinned one of the three who robbed me." Afterwards, the victim signed and affidavit indicating he picked out the applicant. (RR4: 154-158). The complainant made it clear that he could not identify the other two robbers. (RR4: 170-172), but on further testimony he stated that the light-skinned one is the one he struggled with, alleged to be the applicant. On cross-examination, Detective Gay <u>admitted</u> that the applicant's picture was over exposed to show him to be lighter skinned that the other five (5) people in the photo line-up. (RR4: 12-13).

Since the victim described his attacker to Detective Gay to be a light-skinned black malebetween the age of 18 to 20, the Detective clearly as alleged by the applicant overexposed the picture to comport with the complainant intitial description, making it all but inevitable for the complainant to pick out the applicant during the tainted photo line-up. As guidance to this Court, and helpful in its analysis to applicant's claim of the corrupting effect of the photo line-up against the eventual in-court identification, the trial court posed an important question to Dectective Gay:

> "The Court: What about the question. Do you see him as lighter than all the others?"

> "The Witness: Yes, sir, from the picture, he is much lighter but that's the only picture I had of him and that's what I [t]hought he looked liked." (RR4: 15).

Clearly, Detective Gay went to the victim's place of business, convinced he had the perpetrator of the robbery and attack, and showed the applicant's photo as much lighter than all the other photos to make it all but inevitable for the complainant to pick out applicant. Due to the tainted and corrupting out-of-court photo line up.

61

During the eight (8) month interval between the offense and trial, the victim admitted to visiting Sonya Holder several times while she was in jail for this charged offense, and placing money on her books for her use. (RR4: 224-226). Said visits by the victim of a crime was clearly very impermissible. The applicant asserts that it was during these visits that the evidence shifted all against him, and not the real perpetrators, which included the light-skinned black male between the age 18 to 20. In addition, and significant to applicant's position, Sonya Holder attested to recieving testimonial immunity in exchange for her testimony and it was her hope she'll recieve probation, in spite of having a prior felony, for being the master mind in the robbery against the complainant. (RR4: 39-40, 72, 88). Sonya Holder subsequently recieved probation for her part in the offense and the applicant was the sole one punished and sent to prison.

The applicant presented alibi testimony, seeking to prove and establish his whereabouts at the time of the offense, and that not only is he a victim of irreparable misidentification, but that the witness Sonya Holder presented clearly perjured and fabricated testimony. The applicant presented three (3) witnesses wo all testified to the applicants whereabouts at the time of the robbery. Witnesses Margaret Walker, Steve and Stefan Michaelenko all testified that the applicant, on the date and time of the offense, worked on Margaret's car, and worked all night on her car, installing a new engine. Margaret testified that the applicant was still working on her car when she left for work the following morning at 4:00 a.m. (RR5: 6-19, 28-34, 43-49).

In light of the above, the applicant asserts he comes inder the 'actual innocence' provisions of Schlup v. Delo, [citations ommitted], and that due process would best be served for the applicant by this Court entertaining the application to alter a fundamental miscarriage of justice from prevailing into the conviction of an innocent man.

ACTUAL INNOCENCE IS AN EXCEPTION TO AEDPA STATUTE OF LIMITATIONS.

Constitions of both Texas and the United States embodies the Due Process and the Suspension Clause, and Equitable Tolling is merited in this case. The assertions of actual innocence are currently catagorized as Herrera-type claims or Schlup-type claims. Herrera v. Collins, 113 S.Ct. 853 (1993); Schlup v. Delo, 115 S.Ct. 851 (1995). These actions have been adopted into State law in Texas, See Ex Parte Elizondo, 947 S.W.2d 202, 208 (TEx.Crim.App.1996); Ex Parte Franklin, 72 S.W.3d 671 (Tex.Crim.App.2002).

A _Herrera_-type claim involves a substantive claim in which the applicant asserted a bare claim or a free standing claim of innocence based on newly discovered evidence, and ont the other hand, is a procedural claim in which the applicant's claim of innocence does not alone provide a basis for relief but is tied to a showing of consitutional error at trial. _Schlup, supra_ at 314.

Habeas Corpus is the proper vehicle for actual innocence claims. "The principle purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness." _Engle v. Tanac,_ 102 S.Ct. 1568 (1982); _Wainwright v. Sykes,_ 97 S.Ct. 2497 (1977). The truth is that courts are made up of fallible people, not machines or dieties but rather those creatures that are prone to error type people. And, Habeas relief is based upon the principle that "in a civilized society, the Government may be held accountable to the judiciary for a man's inprisonment: if the requirement of law, the individual is entitled to his immediate release, and claims of any actual innocence raises issues of constitutional magnitude." _Elizondo, supra_ at 204.

This principle is assential in a constitutional system. "After all, the central purpose of any system of Criminal Justice is to convict the guilty and free the innocent." _Herrera, supra_ at 339; _U.S. v. Nobles,_ 95 S.Ct. 2160 (1975). The presumption of innocence is afforded throughout his entire trial and is rooted in American Jurisprudence and tradition. _Kirby v. U.S.,_ 19 S.Ct. 574, 577 (1896).

"A criminal process becomes deficient when it offends some principle of justice rooted in the traditions and conscience of our people as a hole to be ranked as fundamental." _Medina v. California,_ 112 S.Ct. 2572 (1922) quoting _Patterson v. New York,_ 97 S.Ct. 2319 (1977). For all practical legal purposes, habeas corpus is the last judicial inquiry intto the validity of a criminal conviction, and the final opportunity, of the courts to correct their inevitable errors, as well as give recourse to the innocent. This is not to say that either the District Attorney's or the Court's are in any evil or cruel, however, applicant would ask this reviewing Court to take notice of judicial or adjuducative fact(s), for example, pursuant to Rule 201 of the Federal Rules of Evidence titled Judical Notice of Adjudicative facts, applicant asserts the facts listed below are within the scope of the rule and merit notice is that (1) the facts are generally known, (2) capable of accurate and ready determination by reason to sources whose accuracy cannot

reasonably be questioned, and is mandatory when the court is supplied the proper information.

Applicant argues that case law supports this position of the court taking judicial notice of facts that could influence the outcome of the trial, hearing, or decisions of the court. These Courts include, Ennis v. Dupree, 136 S.W.2d 702 (1964); Clayton v. Remmer, 136 S.W.2d 562 (1964) and specifically in criminal proceedings, People v. Mayer, 45 P. 860 (1896); Ross v. United States, 374 F.2d 97 (8th Cir. 1967).

And, this issue specifically relates to the Mens Rea of people involved in the case that while not intentionally have made an effort to decieve others have nonetheless demonstrated a mindset conductive to arriving at a conclusion other than the truth. Specifically the applicant asserts that the facts the Court must take judicial notice that includes the following, (1) the efforts of law enforcement officials to "stop crime" is highly competitive, and in support United States Supreme Court Justice Day noted in the landmark case of Weeks v. U.S., 34 S.Ct. 344 (1914), that "the tendency of those who execute the criminal laws of the country to obtain convictions by means of unlawful seizures and enforced confessions, the letter often obtained after subjecting the accused person to unwarranted practices that are destructive of the accused rights secured by the Federal Constitution should find no sanction in the judgments of the courts."

(2) There exists within the Great State of Texas literaly dozens of agencies charged with law enforcement of State and Federal Law. (3) At every agency encourages citizens to do so in an effort to reduce criminal activity and investigate allegations of wrong doing. (4) While generally speaking of law enforcement agents may no longer act as Justice Day suggested and use unlawful means, to achieve there ends, the competitive nature of these agencies still exist. (5) Currently there are numerous victims rights lobbyist registered with the States of Texas placing pressure under the Legislative part of the Government to eradicate crime any way possible. Applicant was arrested and found guilty of Aggravated Robbery and convicted for 32 years in the Texas Department of Criminal Justice. It was not because of his participation if any it was because a 60 year old man who admitted to having sex with a 21 year old prostitute for 5 years trading the sex with money and drugs, but the State does not want the jury to look at the private life of Pete Arevalo, it wants the jury

64.

to concetrate on the applicant because of his past which is stereotypical of a prosecutor wanting to secure a conviction at any cost no matter that the accused had alibi witnesses who testified that he was nowhere near the victim on the day and time in question.

The victim admitted that he was committing crimes of sexual assault of a child and drug distribution. The accomplice witness Sonya Holder stated that the gun in question used to pistol whip the victim was taken out of the home as it was taken in. The victim manufactured evidence which continues to show that he had a propensity to committ crimes but he was never prosecuted due to his alleged victimization by the accused.

Habeas Corpus is a "Writ Of Right," as according to U.S. Constitution Article I §9, nor is the access to the courts via this writ of right be denied. Johnson v. Avery, supra at 485. "Section §2254 does not prohibit the courts from entertaining actions after the statutory limitations passed, instead it merely sets forth relevant statute of limitations. Therefore, the statutory language of Section §2254(d)(1) indicates that Congress did not intend the limitations period to divest federal jurisdiction." Recent important decisions that are relevant to Texas and may impact this claim of actual innocence thus includes, Detkey v. Haley, 124 S.Ct. 1847 (2004); Engle v. Issac, 102 S.Ct. 1558 (1982); Murray v. Carrier, 106 S.Ct. 2639 (1986); Finley v. Johnson, 243 F.3d 215 (5th Cir. 2001); Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000). These cases involve the hearing of actual innocence, and applicant would now discuss the inter-relationship of these cases under the next section.

CAUSE AND PREJUDICE

In Engle, the Court formulated a two prong test and approach to dealing with defaulted claims in State Courts. Any applicant bringing actual innocence claims to federal and State courts after procedural default must demonstrate cause and prejudice before obtaining relief. Here we also learn, "while the nature of the constitutional claim may affect the calculation of cause and prejudice, it does not alter the need to make a threshold showing." In summary, this is explained that the indigent, pro-se litigant, must explain why his claim was defaulted, thus, showing cause and showing how he was harmed by its prejudice. In Engle, the test was applied to a capital murder trial where the main default was failure to object to impriper jury instructions. In Murray, the Court decided they liked the cause and prejudice test as well and they applied it to a defaulted discovery claim, but agreed that the claim was subject to dismissal because it failed to establish cause for default.

They also introduced some other radical ideas, "showing that actual or legal basis for claim was not reasonably available to counsel, or that some interference by officials made compliance with State's procedural rule impracticable, would constitute cause for procedural default. Ineffective assistance of consel is cause for procedural default, but Exhaustion Doctrine generally requires that such claim must be presented to State court's as independant claims before it may be used to establish cause for procedural default."

And the most important of these issues is that a "showing that actual or legal basis for claim was not reasonably available to counsel, or that some interference by officials made compliance with the State's procedural rule impracticable, would constitute cause for procedural default." Also, if a litigant can show that things were kept secret from him, the basis of the claim was beyond his knowledge then relief might be available.

In Haley, the Court addresses the idea of expanding the "actual innocence" claim to non-capital cases. Oddly, they declined to do so and reversing the 5th Circuit case saying that Federal Courts must first address all non-default claims. The federal and State courts will not entertain procedurally defaulted constitutional claims in application for Habeas Corpus absent showing of cause and prejudice to excuse the default, unless Habeas Corpus applicant can rightly demonstrate that alleged constitutional error has resulted in conviction of who is actually innocent of underlying offense.

In Finley, the prosecution failed to disclose highly prejudicial evidence exculpatory in nature in violation of Brady. Here Texas's abuse of writ doctrine acted as a procedural bar and demonstrated a "cause" sufficient to meet the one standard, and the innocnece demonstrated by the Brady evidence met the prejudice test and represented a "fundamental miscarriage of justice."

In Dowthitt, applicant argued that affidavits of mental health experts demonstrated denial of right to counsel due to failure to present mitigating defense based on mental illness. The court refused to find weither cause and prejudice and held that no evidence of actual innocence was presented, and so the applicant was promptly killed. Because these cases are very instructed regarding the process of how the law and local courts should review these claims they are cited and included as suggested reading, pursuant to the above, applicant would like to show the court as folows:

CAUSE FOR PROCEDURAL DEFAULT

Applicant asserts that he suffered procedural default of the AEDPA one year rule, and is therefore procedurally barred from review and this was caused by the miscalculation by the courts on when equitable tolling was to be applied. As explained earlier in this memorandum that the applicant's first Habeas Corpus application equitable tolling was defaulted due to the Court Clerk of Travis County failed to file the application when they recieved it of the 31st of January 2002. The first application was mailed from the Jordan Unit on January 27, 2002. See the following:

| | | |
|---|---|---|
| Appeal filed | January 29, 2001 | |
| Appeal affirmed | July 26, 2001 | |
| Motion for Extension of time to file PDR. | August 17, 2001 | |
| Extension of time granted until | October 26, 2001 | |
| One year limitation period ends | November 16, 2002 | |
| Mandate issued | November 9, 2001 | |
| Application mailed | January 27, 2002 | |
| Court recieved | January 31, 2002 | |
| Clerk filed | June 26, 2002 | 150 days passed |
| Writ of Mandamus filed | June 3, 2002 | |
| Certificate of service on mandamus | May 29, 2002 | misconstrued date |
| Application and Writ of Mandamus Denied | September 11, 2002 | 223 days total |
| Petition for §2254 filed | March 7, 2003 | 177 days |
| Equitable tolling days left | | 46 days |
| Decision on §2254 (Time Barred) | April 11, 2003 | |

Applicant recieved ineffective assistance of counsel for failre to provide expert witness, failure to call exculpatory witnesses, failed to object to extraneous offense testimony, failed to preserve error, failed to request to specific jury charge instructions, failed to object to jury charge. Applicant recieved the ineffective assistance of appellate counsel for failure to litigate all available claims, including not arguing ineffective assistance of counsel which is cause in itself.

PREJUDICE PROVIDED BY THE TRIAL COURT

Applicant asserts that he is actually innocent of the crime and he was convicted of aggravated robbery and was prejudiced by the State by the using of manufactured evidence by the victim, perjury by the accomplice witness and the tainted in-court identification of the applicant. Applicant provided alibi witnesses that showed he was in a different place at the time of the offense in which the court and the jury never considered due to the past of the applicant. As further explained in this memorandum.

IN THE CASE AT BAR

67

The applicant avers that he did not have his trial records until January of 2009, when he was able to bring together the finaces to purchase the record and the applicant had only the appellate brief to go on for his past filings. This is why the applicant is asking the court to alow him to file a successive writ in order to exhaust these errors and prove his actual innocence. Habeas Corpus is a unique civil action that incorporates some aspects of criminal law, in which the Second Circuit Court of Appeals has used the Medina standard to determine whether a procedural rule governing federal law related to Habeas Corpus in which violated the Due Process Clause. See Triestman v. U.S., 124 F.3d 361, 379 (2nd Cir. 1997). Applicant request that this reviewing Court to adduce a findig of fact and conclusion of law concerning what standard of review it had adopted to guage the actual innocence claim made here by the applicant. Some Habeas Courts have suggested that a complete procedural claim of actual innocence would raise significant questions under the Due Process Clause, the Eighth Amendment, and the Suspension Clause of the U.S. Constitution. See Ludicore v. New York, 209 F.3d 107, 114 (2nd Cir. 2000).

ACTUAL INNOCENCE HA A CONSTITUTIONAL DIMENSION

The Supreme Court has observed that "concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system." Schlup v. Delo, supra at 851. Likewise the Supreme Court has stated that it is a "fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." In Re Winship, supra at 1068. In several cases including Herrera, Murray, and McCleksy, the Supreme Court has cited a constitutional factor to 'actual innocence' and consistently cited the existence and exception to bar from review where a applicant's lack of compliance with some procedural requirement would otherwise bar review. See Bousley v. U.S., supra at 1604; Schlup, ibid. "It is curious that there exists a question of what area of the constitution is impacted by 'actual innocence' in view of the procedural bar os one of Congress making in §2254(d)(2)," in that, while it is the Fifth Amendment that clearly governs actions of Congress.

It is the State that applicant alleges to have violated Due Process, by the continued incaceration of an innocent man. The Court held in Alexander v. Keane, 991 F.Supp. 329 (SDNY 1998), questions the applicability of the Fifth and Eighth Amendment, explaining "it is not clear how either the Eighth Amendment (of for that matter, the Fourteenth Amendment Due Process Clause)

68

applies as when as here, a state is imposing the punishment, but it is access to the federal courts that is sought." The Alexander court concluded that the only constittional issue raised by the applicant's claim of actual innocence was the 'suspension clause' [emphasis added] See Art. I §9 Cl.2 of the United States Constituion.

Courts have benn hesitant to address the 'Constitutional Dimesion of Actual Innocence' if it may reasonably construe (that) statute to avoid constitutional question. See Arnatt v. Kennedy, 94 S.Ct. 1653 (1974); Wainwright v. Sykes, 97 S.Ct. 2497 (1977). Therefore, equitable tolling is merited as with 'actual innocence' and 'miscarriage of justice' exceptions to other procedural bars to review, a toll for actual innocence would be consistent with AEDPA and it's objective of avoiding undue delay and promoting finality. See Calderon v. Thompson, 118 S.Ct. 1489 (1998). The miscarriage of justice exception is then altogether consistent...with the AEDPA's central concern that the merits of concluded criminal proceedings not to be revisited in the absence of a strong showing of actual innocence. Actual innocence also has a statutory basis in the §2254(d) sections as it allows for relief invited by Governmental delay.

CONCLUSION

Applicant asserts that the delay along with the other factors listed in this argument needs an evidentiary hearing to have the issues addressed by the courts with the findings of facts and the conclusions of law to determine the merits and order a reversal.


## GROUND FOR REVIEW NO. 11

THE APPLICANT CONTENDS THAT THE APPELLATE COURT MISAPPLIED THE STANDARDS OF NEIL V.. BIGGERS IN THE AFFIRAMTION OF THE APPELLATE REVIEW.

ARGUMENT AND AUTHORITES:

The applicant contends that the appellate court misapplied the standards of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375 (1972). See Brown v. State, 64 S.W.3d 94 (Tex.App.–Austin 2001). The State Court relied on the states cases of Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); Loserth v. State, 963 S.W.2d 770, 771 (Tex.Crim.App.1998). As the standard of review for a ruling on a "Motion to Suppress An In–Court Identification" due to an impermissible and suggestive pre-trial identification procedure, the Neil v. Biggers, five (5) factors were cited but not adequatley applied. The State Court admitted that the third prong of Biggers, (The accuracy of the prior description) was not

but sought to justify the other four factors which all are interconnected and stemmed to the initial description given by the victim.

Detective Gay, who conducted the photo-lineup, during questioning from the trial court, testified that applicant's picture was much lighter than the other five pictures, (RR4: 15), because he [t]hought that's how the accused looked. Detective Gay further testified that in spite of the victim's assertion and unwavering statement that his attacker was a light-skinned black male between the age of 18 and 20, (which is what the applicant believes promted the detective to display the picture of the applicant much lighter than the other five), that after seeing the applicant for the first time at trial, he realized that the applicant has "very dark, black skin," (RR4: 12-13).

Said photo of the applicant, being much lighter than the others, made it easily distinguishable, and all but inevitable for the victim to pick out the applicant in the lineup. Applicant respectfully request for this reviewing court to examine State's Exhibit No. 1 the photo lineup, to decide for itself whether or not the same was impermissibly suggestive. Said practice by vigilant police officers has been long condemned by federal law, as defined by the U.S. Supreme Court. See Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967 (1968).

Said constitutionally infirmed procedure made the subsequent in-court identification unreliable. See Mason v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243 (1977). The facts in the instant case creates a very substantial likelihood of irrepairable misidentification. (See the five (5) factors of Biggers, infra, for guidance). Said factors, weighing against the corrupting effect of the pre-trial identification procedures, clearly establishes constitutional error. The five (5) factors are as follows:

(1). Adequate opportunity to view the applicant.

> Even though the victim contends he had adequate opportunity to view his attacker, alleged to be applicant, he clearly described the attacker he viewed as someone who was light-skinned and between the age of 18 to 20, but in actuallity the applicant was in his thirties, and wore a beard and mustache.

(2) The witness's degree of attention.

> The victim contends he stood face-toface with his attacker, yet he still rendered a description shortly after the incident of his attacker as someone that was other than the applicant. Detective Gay testified that the victim told him that he did not get a good look at the second individual and did not feel like he could identify him. However, he knew that the second individual was very dark. (RR4: 170-172).

70

(3). The accuracy of the witness's prior description.

> The initial and unwavering description of the attacker as compared to the applicant's description is clearly erroneous. and is acknowledged by the State Court.

(4). The level of certainty.

> The victim asserted he was certain applicant is the attacker and it is apparent the impermissibly suggestive pre-trial tainted identification in court alleged a 'certainty' that should be then weighed against the obvious "uncertainty" of a teen-aged light-skinned black male matching the applicant, who is a dark-skinned black male in his thirties and wears a beard and mustache.

(5). The length of time.

> A full eight (8) months had elapsed from the time of the offense and applicant's tainted in-court identification. For a full eight (8) months, the victim, (based on the photo which depicted a light-skinned over exposed picture of applicant), had fixed in his mind that his attacker was a young, light-skinned black male. Even though the Detective was shiocked at the applicant's actual description and appearance which was opposite the description the victim shared with him shortly after the incident.

The State Courrt clearly erred in concluding the Neil v. Biggers factors were satisfied. See Brown v. State, supra, at 101.

Consequently, the State Court's decision in denying the applicant's relief sought was contrary to clearly established federal law, as determined by the Supreme Court. Williams v. Taylor, 120 S.Ct. 1495 (2000); Neil v. Biggers, supra; Manson v. Braithwaite, supra; Simmons v. U.S., supra. [citations ommitted].

Clearly, the State unreasonably applied the factors of Biggers, which is the controlling standard of review, against constitutional violation of the tainted indentification proceedings against the applicant. Said ruling and constitutional error, discussed establishes a "strong probability" the resulting conviction is againt one who is actually innocent of the charged offense, and that applicant, being a victim of irrepairable misidentification is not the 'person' who committed the underlying offense which is the construct of Schlup v. Delo. Consequently, this Honorable Court should grant an hearing on the evidence presented with the findings of facts and conclusions of law in the determination as to the principles of finality and comity "must yield to the imperative of correcting a fundamentally unjust incarceration." The Court will find that there is evidence in the record that clearly shows innocence.

71

THE APPLICANT CONTENDS THAT THE STATE FAILED TO OBJECT TO THE COURT'S CHARGE THEREBY FAILED TO PRESERVE ERROR FOR APPELLATE REVIEW WHICH SUSTAINS THE IN VIOLATION OF APPLICANT'S DUE PROCESS RIGHT OF LAW AND DUE COURSE OF LAW RIGHTS AND DENIED HIM A FAIR TRIAL.

ARGUMENT AND AUTHORITES:

A. FACTS

The applicant avers tha the hypothetically correct jury chage it had written was errornoues and that the State as well as the defense are given the opportunity to object to its contents and when the State fails to object it is a violation and the applicant is harmed because the hypothetical correct jury charge is what the jury goes by to make their determination as to the way they are to treat the case during deliberation.

B. APPLICABLE LAW

The trial court was required to give accomplice-witness instruction as to the witness Sonya Lee Holder after the guilt and innocence phase of the trial and the trial court was obligated to instruct the jury about the present prohibitions of Article 38.14 of the Texas Code of Criminal Procedures. See Martinez v. State, 163 S.W.3d 92, 94-95 (Tex.App.-Amarillo 2005). As the opinion and mandate was issued the State failed to file any motions for rehearing, or a motion to recall mandate nor did the State in any way challenge the correctiveness of the ruling given as to the accomplice. "When time provisions have expired without further appeal from the decision of the Court of Appeals, and mandate has been issued without any motion to recall having been filed, decision of the Court of Appeqals is final and must be enforced. Texas rules of Appellate Procedure, Rules 18, 51; Gonzales v. State, 904 S.W.2d 175 (Tex.App.-San Antonio 1995); Gainer v. State, 636 S.W.2d 15, 16 (Tex.App.-Corpus Christi 1982).

At trial the State was presented with the hypothetical correct jury charrge, the State did not object knowing that it was incorrect nor did they request any special instructions be given. However, the applicant claims that the courts charge provided the jury with an erroneous instruction. A party "should not be permitted to waive, consent to, or neglect to complain about an error at trial." Pirtle v. Gregory, 629 S.W.2d S.W.2d 919, 920 (Tex. 1982). The State at trial failed to object, thus preserve this issue that of the Court's Charge provided an erroneous instruction. To preserve a complaint

for appellate review, a party must make a timely objection, request, or motion with sufficient specifity to apprise the trial court of the complaint. T.R.A.P. Rule 33.1(a); Saldano v. State, 70 S.W.3d 873, 886-87 (Tex.Crim.App.2002); See Nolan v. State, 102 S.W.3d 231 (Tex.App.-Houston[14th Dist.]2003).

In the State of Texas rules require that parties object at trial in order to preserve error for review on appeal. Saldano, supra at 886; T.R.A.P. 33.1(a), as well as under the Texas procedural rules, the failure to raise a complaint on appeal; and procedural rules state that any complaint to a jury charge is waived unless specifically included in an objection. T.R.A.P. 33.1(a); Tex.R.Civ.P. Rule 274; In Re B.L.D., 113 S.W.3d 340, 349 (Tex.2003) (Texas Rules on Preservation). Of the three rules, the State failed in each and every way. Had this been the applicant, he would have been told "Appellant did not object, thus failed to preserve error for appellate review," the State holds no different status as that of the applicant. In 1987, when the Legislature amended the constitution of Texas they gave the State the right to appeal, the State finally attained the full status as an appellant. See Ex Parte Taylor, 36 S.W.3d 883, 886-87 (Tex.Crim.App.2001). The state has not cited and no where can it be found anywhere in the appellant record or trial record that the State raised the issue in the trial. Even if the State had preserved this issue in trial, the State has waived error by failing to adequately brief it on appeal. To present an issue for appelate review "the brief must contain a clear and concise argument for the contentions made with appropriate citations to authorities, and to the record. Tex.R.App.P. 38.1 (h).

The State did not present a single argument or citation in support of this issue. The State did not address any of the governing legal principle or applied them to any of the facts of the case regarding this issue. See King v. State, 17 S.W.3d 7, 23 (Tex.App.-Houston[14th Dist.] 2000, pet. ref'd). The applicant avers that simply put, the State, at trial failed to object to object to the alleged error in the court's charge thereby failing to preserve the error for appellate review, had in fact this had been an error; the fact remains that at trial no objection was made on the hypothetical correct jury charge so that applicant or trial court could correct such. This fact and others denied the applicant a fair trial because he could do nothing until now, this issues was never brought up. The Texas Court of Criminal Appeals has recognized two general policies for requiring specific objections. "First,

a pecific objection is required to inform the trial judge of the basis of the objection and aafford him the opportunity to rule on it." In applicant's case he was denied this opportunity. "Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony." Again the applicant was denied the opportunity. Zillender v. State, 557 S.W.2d 515, 517 (Tex.Crim.App.1977).

Objections promote the prevention of errors and help the correction of those errors. When valid objections are timely made and sustained, the parties may have a lawful trial. It is quite easy to assume what has occured in the applicants case for the failure of the State to make this objection. He was denied a fair ttrial. A statute permits our appellate courts to consider claims that an error in the courts charge to the jury to which no objections were made and was so grave an error as to deny a applicant a fair trial. Tex.Code.Crim.Proc. Art. 36.19; Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App. 1984). This complaint has happened in the applicant's case. A party must make the trial court aware of the complaint timely and plainly, and obtain a ruling. State Dep't of Highways and Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992). The State has clearly failed to do such, thus denied the applicant to a fair trial. Applicants due process rights and due course rights of law to a fair trial which were violated under the Fifth and Fourteenth Amendments of the U.S. Constitution and Art. I §10, 19 of the Texas Constitution. Applicant then request the reviewing court to hold an evidentiary hearing and determine the merits of the complaint with the findings of facts and conclusions of law and if so found order a new trial or vacate the sentence.

C. CONCLUSION

The traditional term in Texas Criminal Law that corresponds to "plain" is "fundamental error." Art. 36.19 establishes the standard for fundamental error in the court's charge: "The judgment shall not be reversed....unless it appears from the record that the applicant has not had fair and impartial trial." The Court's have paraphrased this statutory standard in other terms at different times. If the applicant or the State had objected to the court's charge, and it was errornoues, the appellate court would have been required to apply the one and only appropriate standard. The choice of the standard would have depended on whether the error violated a right under the federal constitution, among other things. But since either side did not object ad preserve the issue for

74

appellate review, the appropriate standard is the statutory one for fundamental error in the charge. See Jimenez v. State, 32 S.W.3d 233, 235 (Tex.Crim.App. 2000).

## CONCLUSION TO MEMORANDUM

The applicant contends that he has no excuse for the past handleing of his case that was presented previously to the court's except that he had no scientific working knowledge of law and relied upon the common use of jailhouse lawyers who were only looking to make a quick dollar on someone who had ignorance about the workings of the court system. Here is a concrete area were someone who has a prima facie showing of his unfair prosecution and was hindered in every form from the courts to argue the correct issues that are present within this memorandum and application. A evidentiary hearing is needed here in order for the courts to extract correct and true justice just not any hangman mentalities from prosecutors looking for another notch in there gun handle. In Black v. Collins, 962 F.2d 394 (5th Cir. 1995), cert denied, 504 U.s. 992 (19996), the Court discussed the requirement of an evidentiary hearing. The Court noted that if an exception to the presumption of correctness was even the slightest, established, the same showing would entitle the applicant to an evidentiary hearing.

The current rule that an applicant is entitled to an evidentiary hearing is if:

(1) there is a factual dispute which, if resolved in his favor would then entitle him to relief, and

(2) he did not recieve a full and fair hearing in State Court.

East v. Scott, 55 F.3d 996 (5th Cir. 1995).

Many times, the need for an evidentiary hearing in the result of the failure to fully develop the claim in State Court. In many cases, the applicant may obtain additional evidence to support a claim, or may not have alleged all the available facts in the State applications. In Keeny v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715 (1992), the Court held that a cause and prejudice test applies to the failure to develop the facts during a State Court proceeding. The Court will conclude that the applicant is entitled to a hearing only if he can establish cause for failing to develop the facts and prejudice for not allowing him to present them in court. The applicant contends that is done here in this application and memorandum.

In a proceeding motivatted by an application for a Writ of Habeas Corpus

by a person in custody pursuant to a judgment of a State Court, then a determination of a factual issue made by a State Court shall be presented to be correct. Applicant shall qhave the burden of rebutting the presumption of correctness by the clear and convincing evidence presented here in this memorandum. If applicant has failed to develop the factual basis of the claim in State Court proceedings, the Court shall not hold a evidentiary hearing on the claim, unless the applicant shows that a factual predicate that could not have been previously discovered through the exercise of due diligence, and the facts underlying the claim would be sufficient to establish clear and convincing evidence that, but for the error of constitutionally large magnitude, no reasonable fact-finder would have found the accused guilty of the underlying offense if not for the promptings of the State.

With the facts of the perjured testimony knowingly presented by the State, and failing to correct it once it was shown by other testimony to have been false and the defense counsel's failure listed in the complaint, and not ruling on actual innocence presents clear and convincing evidence needed to discredit the presumption of correctness by the State Court and therefore, an evidentiary hearing is warranted.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, applicant humbly prays that this Honorable Court will grant the Motion for Successive Petition and allow him the one and only opportunity to prove that he has the evidence in this application and in the memorandum to show that he has standing to be granted relief and that a evidentiary hearing is the only way that he can proceed to show his innocence.

Respectfully Submitted,

Robert Lee Brown #927914
TDCJ-CID, Applicant Pro-Se
Eastham Unit
2665 Prison Road #1
Lovelady, Texas 75851


## CERTIFICATE OF SERVICE

I, Robert Lee Brown, applicant pro-se, hereby certify that the forgoing information is true and correct, and a copy is being mailed to the District

76.

Court Clerk of Travis County at P.O. Box 1748, Austin, TX 78767.

Signed on this 28 day of May , 2009.

Robert Lee Brown #927915
Applicant Pro-Se
TDCJ-CID
Eastham Unit
2665 Prison Road #1
Lovelady, Texas 75851

PRIORITY
* MAIL *
* UNITED STATES
POSTAL SERVICE ®
c Use Only

TRACKED
INSURED

Label 107R, July 2013

Brown #927914

Rd. #1

yees

851

UNITED STATES
POSTAL SERVICE ®

USPS TRACKING #

9114 9999 4423 8588 7897 04

LAB400R Aug. 2013
7690-17-000-0869

Court Of Appeals
Third District
P.O. Box 12547
Austin, Texas

78711-2547

UNITED STATES
POSTAL SERVICE

1006          78711

U.S. POSTAGE
PAID
LOVELADY, TX
7585
FEB 10, 15
AMOUNT

$0.00
00021098-02

FOREVER USA